GEOFFREY D. WYLER, SECOND, vs. BONNELL MOTORS, INC.

No. 92-P-932.

Middlesex. September 27, 1993. - December 1, 1993.

Present: PERRETTA, KASS, & PORADA, JJ.

*Consumer Protection Act*, Unfair act or practice, Collection of debt, Damages, Jury trial, Res judicata. *Res Judicata. Damages*, Consumer protection case. *Practice, Civil*, Jury trial.

In a civil action in which a jury awarded the plaintiff $45,000 for the defendant's abuse of process and, in a separate trial of a related G. L. c. 93A claim, a judge found that the defendant acted unfairly and wilfully but that the damages were only $7,500, the plaintiff was entitled to recover as punitive damages only the amount so found by the judge ($7,500); principles of issue preclusion did not bind the judge to accept the damages assessed by the jury on the underlying claim. [567-569]

CIVIL ACTION commenced in the Superior Court Department on June 6, 1988.

A claim alleging abuse of process was tried before *Joseph S. Mitchell, Jr.*, J., and a claim alleging violation of G. L. c. 93A, the Consumer Protection Act, was heard by *James F. McHugh*, J.

*Peter T. Wechsler* for the defendant.
*Andrew M. Fischer* for the plaintiff.

KASS, J. There must be a cautionary tale to spin when, as here, a difference of opinion about an automobile repair bill of $502.33 results in an aggregate judgment for the customer of $120,418.[1]

What we are to decide is whether, if G. L. c. 93A damages are to be assessed after the underlying common law

[1]The second trial judge aptly remarked that he was contemplating "a case study in how to escalate a minor difference into a major battle." Compare *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85 (1983).

claim has gone to judgment,[2] a different judge who hears the related 93A claim is bound by principles of issue preclusion to accept the previously assessed common law damages for purposes of assessing the 93A damages? To illustrate with actual numbers, if a jury returns a verdict of $45,000 for abuse of process, is that the number that the 93A judge is bound to double if he finds that the defendant acted unfairly and wilfully, even though the judge's independent finding is that the damages are $7,500? The answer is "no" and our holding will require a reduction in the amount of the c. 93A judgment.

We have the benefit of careful findings from the judge on the 93A case, and we rely on them to set the factual context. Geoffrey D. Wyler, a lawyer, owned a 1981 Ford Tempo automobile which he had purchased from Bonnell Motors, Inc. (Bonnell), and which he regularly took to Bonnell for servicing. On April 17, 1985, after discovering that the rear window of his car had been shattered in an act of vandalism, Mr. Wyler asked his son, Geoffrey D. Wyler, II (Geoffrey), to take the car to Bonnell for repair and to rent a car from Bonnell to tide them over until the Tempo was fixed (the repair was to take a day). Geoffrey, who was eighteen at the time, signed a repair authorization on which was prominently printed: "TERMS: CASH OR MAJOR CREDIT CARD." In connection with the car rental, Geoffrey left an imprint of his mother's credit card on a blank charge slip (signed by Geoffrey, according to his testimony).

Next morning Geoffrey went to pick up his father's car and to return the leased vehicle. The bill for the glass repair was $502.33. Geoffrey informed the service manager at Bonnell that the damage was covered by insurance and that the insurer would pay. Bonnell was adamant that it must be paid (cash or major credit card) before it would release the car. Geoffrey called his father. Mr. Wyler, in turn, called Bonnell and had no better success in persuading Bonnell to accept his

---

[2]That is a rare circumstance and, as we shall have occasion to observe, an undesirable one.

insurer's payment.[3] Unable to retrieve his father's car, Geoffrey left in the rented vehicle. It may have complicated matters that Mr. Wyler had not, up to this point, notified his insurance agent or insurer, nor had he troubled to furnish Bonnell with any details about his insurance coverage. That deficiency Mr. Wyler rectified the next day, but Bonnell refused to take the information over the telephone. Mr. Wyler's attitude towards Bonnell now took on a quality of unmitigated hostility and, indeed, it could be said that for a passing interval, Mr. Wyler had the edge on Bonnell in stubbornness.

On May 2, 1985, Mr. Wyler's insurance agent mailed to Bonnell a check, endorsed by Mr. Wyler to Bonnell, in the amount of $425.95, to pay for the glass repair. Bonnell accepted the check in full payment. Either on May 3 or May 4, Bonnell called Mr. Wyler and told him he could pick up his car. On the evening of the day on which Mr. Wyler received that message, he and his son drove in the rented vehicle to Bonnell to retrieve their Ford Tempo. The Tempo was available, but not, Bonnell insisted, unless they paid the rental charges that had accrued since April 17, the day the "twenty-four hour" car lease had begun. Now Bonnell began to pull ahead in the orneriness competiton. There was a heated argument, but the Bonnell employee on the scene refused to release the Tempo, pending resolution of the car rental dispute, even though Bonnell had the Wyler credit card imprint. Mr. Wyler and Geoffrey drove home in the rental car. The next day, Bonnell wrote to Geoffrey that unless he returned the rental car promptly, it would file a criminal complaint against him under G. L. c. 90, § 32F, as inserted by St. 1934, c. 209, § 1, which makes it a misdemeanor to obtain a vehicle from a lessor "by any trick"

---

[3]Mr. Wyler apparently smelled that the insurer, knowledgeable about repair costs, might get a lower price for the work. He was correct. The work for which Bonnell was charging $502.33 had been done for it by a glass repair shop for $298.56, and Bonnell ultimately accepted $425.95 as satisfactory payment from the insurer.

or to "lease[ ] such a vehicle with intent to defraud the lessor."

Geoffrey's response to that warning was silence, and on May 22, 1985, Bonnell did file an application for a criminal complaint. Arraignment followed and a substantial time later — we skip the details — the complaint against Geoffrey in the Woburn District Court was dismissed. As soon as that event occurred, the Wylers launched their counterattack, notably an action for abuse of process and damages under G. L. c. 93A. A jury, as we have said, returned a verdict of $45,000 in favor of Geoffrey on the abuse of process count. The trial judge made a determination under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), that there was no just reason for delay, and judgment for the damages, plus interest, was entered.

The c. 93A prong came before a different Superior Court judge. That bifurcation of common law claim and c. 93A claim has little to commend it. Two trials result instead of one, although the underlying facts and the witnesses are substantially the same. It is not only possible, but it is the norm as well as the preferred practice for a judge to try common law and c. 93A questions simultaneously. In that setting the judge has the choice of: (1) allowing the jury to decide the 93A question as well; (2) taking from the jury a nonbinding advisory opinion of the 93A question; or (3) deciding the 93A question independently. See *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 753 (1993), and cases cited.

In addition to the facts we have already summarized, the 93A judge found that "[n]either at the time it sought the criminal complaint nor at any time thereafter did Bonnell have any evidence that plaintiff had acted with fraudulent intent. Instead . . . Bonnell instituted the criminal proceedings because it believed that use of those proceedings would be a relatively quick and easy way to collect the debt it claimed plaintiff owed. On other occasions, Bonnell had done the same thing even though Bonnell's president was aware of the difference between civil and criminal actions and had

also used civil proceedings to collect debts in the past." The 93A judge went on, correctly, to conclude that instituting criminal proceedings to collect a civil debt was an unfair and deceptive act within the intendment of G. L. c. 93A, § 2. See *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975); *Dahlborg* v. *Middleborough Trust Co.*, 16 Mass. App. Ct. 481, 486 (1983); *Chamberlayne Sch. & Chamberlayne Jr. College* v. *Banker*, 30 Mass. App. Ct. 346, 353 (1991). The judge also made a finding that Bonnell had acted wilfully, thus laying the foundation for multiplying the damages. See G. L. c. 93A, § 9(3).

We return to the core question: whether the jury's finding of damages ($45,000) in the abuse of process case had a preclusive effect in the c. 93A case. In *Chamberlayne, supra* at 354-355, we held that a judge may make independent and, therefore, different, findings on the c. 93A aspect of a case that arises out of the same facts which gave rise to parallel common law claims. The constitutional right to trial by jury is not implicated because there is no right to a jury trial of a c. 93A claim. *Nei* v. *Burley*, 388 Mass. 307, 315 (1983). *Chamberlayne, supra* at 354. So it was that in the *Chamberlayne* case, the trial judge lawfully found c. 93A damages of $60,000, although the jury found damages of $20,000. *Chamberlayne, supra* at 353-354. See also *W. Oliver Tripp Co.* v. *American Hoechst Co.*, 34 Mass. App. Ct. at 753-754 (trial judge thought jury's verdict on parallel contract count was wrong and determined there was no basis for a c. 93A claim founded on a failure by the defendant to perform under a distributorship contract); *Wallace Motor Sales, Inc.* v. *American Motor Sales Corp.*, 780 F.2d 1049, 1063-1067 (1st Cir. 1985) (trial judge may — and did — differ with jury as to whether a counterclaim based on c. 93A had been made out).

The trial judge was aware of the *Chamberlayne* opinion but observed that in that case the judge had presided over both the 93A and non-93A aspects, and it did not appear that a final judgment as to the non-93A component had been entered. We think that distinction ought not to be dis-

positive. The separate trial of the abuse of process claim and the c. 93A claim in the case before us was artificial and, as we have said, undesirable. There is nothing in that artificial division which prompts us to modify the principle stated in *Chamberlayne, W. Oliver Tripp Co.,* and *Wallace* that the subject matter of a c. 93A claim is sufficiently distinct so that a judge sitting independently on the c. 93A claim may arrive at findings different from those of the jury sitting on the non-93A claims, even though there is evidence which, if believed, would support the jury verdict. The mirror image of the problem raised in the instant case came up in the *W. Oliver Tripp Co.* case. There a Superior Court judge had thought a new trial on a contract claim was precluded by principles of collateral estoppel because the finding for the defendant by the first trial judge (who had heard both components but had ordered a new trial on the breach of contract count) on the c. 93A claim logically implied a finding by the judge that the defendant had not committed a breach of the contract in question. We reversed the dismissal of the contract count and said it should stand for trial despite a judgment for the defendant on the c. 93A count.

Against the possibility that an appellate court might differ with him on the judgment preclusion question, the trial judge in this case made an independent finding of c. 93A damages, viz., $7,500. As Bonnell appears to have accepted that figure, we do not analyze the evidence to see how that figure was arrived at. Those c. 93A damages are subsumed in the $45,000 already recovered under the parallel common law claim. See *Calimlim* v. *Foreign Car Center, Inc.,* 392 Mass. 228, 235-236 (1984); *Greelish* v. *Drew, ante* 541 (1993). When doubled because Bonnell had acted wilfully, the c. 93 award, exclusive of legal fees, is $15,000. The punitive component of that figure, $7,500, is not subsumed in the recovery under the parallel common law claim, and the plaintiff is entitled to recover that $7,500. A judgment on the c. 93A

count shall be entered for $7,500, plus statutory interest, and for legal fees and expenses in the amount of $10,000.[4]

*So ordered.*

---

[4]We have considered and reject as not meritorious Bonnell's request for reduced legal fees because the c. 93A recovery has been reduced.