**CAMBRIDGE PLATING, CO., INC. Plaintiff,**

v.

**NAPCO, INC., Defendant.**

**Civ. A. No. 90–11605–WAG.**

United States District Court, D. Massachusetts.

April 19, 1995.

Joseph M. Kaigler, Office of the Sol., Cambridge, MA, Brendan M. Hare, David B. Chaffin, Hare & Chaffin, Boston, MA, and Kevin P. Sweeney, Cuddy, Lynch & Bixby, Boston, MA, for plaintiff.

Peter Alley, William A. McCormack, Bingham, Dana & Gould, Boston, MA, Gary A. Winters, Lawrence S. Robbins, Mayer, Brown & Platt, Washington, DC, and Richard L. Burpee, Burpee & DeMoura, Boston, MA, for defendant.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

### Background

This case arises from the design, sale and installation in 1984–85 of a wastewater treatment system by defendant NAPCO, Inc. ("NAPCO") for plaintiff Cambridge Plating Co., Inc. ("Cambridge Plating"), an electroplating and metal finishing facility located in Belmont, Massachusetts. In 1989, after experiencing continuing difficulties reaching effluent discharge standards and after being fined $682,250 by the Massachusetts Water Resources Authority (the "MWRA"), plaintiff discovered that defendant had failed to install a key component of the system, a static mixer. On September 22, 1994, following an eleven day trial, a jury returned a verdict in favor of plaintiff on three counts—intentional misrepresentation, negligent misrepresentation, and breach of warranty—and awarded $12,183,120 on each count. After receiving extensive post-trial memoranda from the parties, on February 7, 1995, the Court found NAPCO liable under plaintiff's c. 93A claim but awarded only $3,363,120 in compensatory damages. This amount was doubled to reflect the Court's determination that NAPCO's violation of the statute was knowing and willful, making the total amount recoverable under c. 93A $6,726,240. On February 8, the Court entered judgment for plaintiff on all four counts, a copy of which is attached as Appendix A.

Two motions are now ripe for decision. Plaintiff has moved for an amended judgment, seeking 1) an award of prejudgment interest;[1] and 2) an amendment to reflect that plaintiff may recover both the compensatory damages awarded by the jury and the punitive portion of the c. 93A award. Plaintiff has also applied under c. 93A for attor-

---

**1.** The judgment entered on February 8, 1995, which was silent as to prejudgment interest, will be amended to make explicit plaintiff's entitlement to prejudgment interest on the damages awarded by the jury, as ordered remitted herein, at the rate of 12% per annum from June 22, 1990, the date of filing of the complaint, pursuant to Mass.G.L. c. 231, § 6B. There is no authority for allowance of prejudgment interest on costs, and the Court denies plaintiff's request for prejudgment interest on the compensatory portion of the c. 93A award. It is undisputed that prejudgment interest does not run on the punitive portion of that award.

neys' fees and costs.[2] Defendant has moved, *inter alia*, that the Court order a remittitur of the damages awarded by the jury or, in the alternative, a new trial on damages. The Court received and has considered several supporting and opposing memoranda, and heard oral argument on March 17.

### Cumulative Punitive Award

■■■ The Court's decision on plaintiff's c. 93A claim having awarded punitive damages in an amount equal to its award of compensatory damages, plaintiff claims that the punitive award should be added to, i.e., recovered in addition to, the compensatory damages assessed by the jury.[3] We agree. Punitive damages are essentially different from compensatory ones, and are awarded to punish and set an example rather than to allocate a loss or to make an injured party whole. Unlike the compensatory part of the c. 93A award, "the punitive component ... is not subsumed in the recovery, under the parallel common law claim" and may be added to compensatory damages. *Wyler v. Bonnell Motors, Inc.*, 35 Mass.App.Ct. 563, 568, 624 N.E.2d 116 (1993), *rev. denied*, 416 Mass. 1111, 629 N.E.2d 1005 (1994), citing *Calimlim v. Foreign Car Center, Inc.*, 392 Mass. 228, 235–36, 467 N.E.2d 443 (1984).

True, the *Wyler* case is distinguishable from this one inasmuch as plaintiff there was a consumer, whereas plaintiff in the case at bar is a commercial enterprise. Commercial and consumer plaintiffs receive varying degrees of protection in certain contexts. *See Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 475–6, 583 N.E.2d 806 (1991) (in some cases a commercial plaintiff may need to show greater "rascality" in order to recover under c. 93A) and *Knapp Shoes v. Sylvania Shoe Mfg. Corp.*, 418 Mass. 737, 640 N.E.2d 1101 (1994) (commercial plaintiffs cannot rely on Attorney General regulation deeming all breaches of warranty to be c. 93A violations). However, in this

context, we find no basis for such a distinction. When the Legislature extended c. 93A protection to businesses, it also chose to extend the multiple damage provisions of § 9. St.1972, c. 614, § 2. Both § 9 and § 11 mandate a punitive damage award when a knowing or willful violation occurs. This provision reflects "the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct and encourage vindicative lawsuits." *International Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 857, 443 N.E.2d 1308 (1983). In our opinion, application here of the rules stated in the *Wyler* case is consistent with the Legislature's intent in enacting the 1972 legislation. Hence, the Court grants plaintiff's motion to amend the judgment, so that it will provide that plaintiff may recover in addition to compensatory damages awarded by the jury (or as reduced by remittitur if accepted by the plaintiff), the punitive portion of the c. 93A award.

### Remittitur

■■■ Under the doctrine of remittitur, the court may condition the denial of defendant's motion for a new trial or a partial new trial on plaintiff's acceptance of a reduced sum of damages on the counts submitted to the jury. *Conjugal Partnership v. Conjugal Partnership*, 22 F.3d 391, 397–398 (1st Cir. 1994). The remittitur "should reduce the verdict only to the maximum that would be upheld by the trial court as not excessive." In cases involving economic losses, a verdict is excessive as a matter of law if "shown to exceed any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir.1982), *citing Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967). In applying these standards, the Court may consider only the damages evidence introduced during the jury trial.

---

**2.** An additional defense motion, still being briefed, pertains to this application which we shall therefore hold under advisement until after hearing the additional defense motion.

**3.** Plaintiff is not entitled to and has not sought accumulation of the compensatory damages

found in both the jury and non-jury cases, because both awards arise from a common set of facts. *Refuse & Environmental Systems, Inc. v. Industrial Services of America, Inc.*, 932 F.2d 37, 42 (1st Cir.1991).

 Except for three items of direct damages totalling $183,120, damages evidence before the jury consisted entirely of lost profits. In its memorandum of decision on Count IV under c. 93A, the Court identified several deficiencies in plaintiff's proof of lost profits and found damages of less then one third the jury's verdict. The nature and magnitude of such deficiencies are explained there in considerable detail and need not be repeated. They are incorporated herein by reference and compel a remittitur in the amount herein ordered.

In opposing defendant's motion for remittitur, plaintiff concedes *arguendo* that the Court's findings and conclusions may be correct. It urges, on the other hand, that the jury's verdict is also justifiable on two grounds. The first is that plaintiff's expert Finn, had he been given the opportunity on cross-examination, could have rebutted to the jury's satisfaction the alleged defects in his testimony emphasized by the Court. For example, the Court faulted Finn for calculating and relying upon an increase in sales from 1982 to 1983 without disclosing that the 1982 sales figure reflected only sales for the first ten months of the year rather than the full year. Plaintiff argues that if this error (described at pp. 33–34 of the Court's February 7, 1995 memorandum of decision) had been called to Finn's attention during the trial, he could have adjusted his calculations and shown the error to have been inconsequential.

Plaintiff's second ground is that, whatever the shortcomings or vulnerabilities of Finn's expert testimony, the jury could have reached the same conclusions without expert assistance on the basis of plaintiff's financial statements received as exhibits and general descriptions of lost business by President Tosi and other witnesses.

The problem with plaintiff's arguments is that they posit a hypothetical trial rather than the one that actually occurred. Plaintiff's proof of lost profits involved records of sales and expenses for more than a decade and was complicated and technical. It rested almost completely on the testimony of its expert witness, a highly qualified accountant who testified authoritatively, almost dogmatically, and persuasively. To suggest that the jury on its own could delve into the raw financial data underlying Finn's expert opinion and reach a fair verdict is unrealistic and contrary to common sense.

██ Regarding Finn's readiness, if given the chance on cross-examination, to present his opinions more comprehensively and convincingly, defense counsel was under no obligation to afford him that chance. It is not at all unusual for cross-examination to fill in gaps in direct testimony. However, the rule remains that the burden of proving lost profits with sufficient certainty is on the plaintiff. *Augat, Inc. v. Aegis, Inc.,* 417 Mass. 484, 488, 631 N.E.2d 995 (1994). When a plaintiff relies on expert opinion to establish damages, it cannot satisfy its burden "unless that opinion is based on relevant data and the assumptions behind the opinion are shown to be realistic so that the jury has a rational basis for its decision." *Universal Computers v. Datamedia Corp.,* 653 F.Supp. 518, 527 (D.N.J.1987), *aff'd* 838 F.2d 1208 (3d Cir.1988). As explained in the Court's February 7, 1995 memorandum, this was not done at the trial. Whether a new jury will accept the elaborations and adopt the refinements of analysis which Finn is now prepared to offer remains to be seen.

 A jury's verdict must be supportable "as a matter of just and reasonable inference" from the evidence. *Segal v. Gilbert Color Systems, Inc.,* 746 F.2d 78, 81 (1st Cir.1984), *quoting Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). The damages evidence plaintiff relied on most heavily at trial was Finn's testimony—necessarily, due to the complexity of plaintiff's damages theory. That testimony was, in our opinion, based on arbitrary assumptions of whose invalidity the jury was barely informed, let alone enlightened. *Compare Colorado Interstate Gas v. Natural Gas Pipeline Co.,* 661 F.Supp. 1448, 1478 (D.Wyo.1987) (damages expert "explained his assumptions and their inadequacies to the jury"). Here the jury was never able to consider adequately the merits of Finn's methodology and analysis. In these circumstances, it would be a denial of justice to permit the full award to stand.

The Court also found on Count IV that plaintiff's lost profits were inflated improperly by Finn's so-called annualization of 1985 and failure to adjust post–1985 figures for pollution control expenses which would have greatly reduced projected profits. The Court's reasoning is set forth at length in its February 7, 1995 memorandum and repetition here would serve no purpose. It should be noted here that, contrary to plaintiff's recent speculations, the nature of the latter error was such that the jury could not on its own have detected it. Moreover, it was not argued to the jury by defense counsel, who argued the deficiency for the first time, at least with any specificity, in post-trial memoranda. We find that the jury reached an excessive verdict which included compensation for pollution control expenses.

The remittitur herein ordered of $7,839,000 is designed to permit recovery by plaintiff of no more than the damages awarded by the Court in its c. 93A decision for the years 1986 through 1989. In our opinion, the jury could not rationally have awarded plaintiff greater damages for those years. This ceiling stands upon the following findings made and explained in the February 7, 1995 Memorandum of Decision:

1) The appropriate sales figure for 1985 is $6,164,000;

2) the maximum average annual sales increase that could be expected in 1986–1993 was $394,000;

3) pollution control expenses for each year must be deducted from that year's projected gross profits;

4) a gross profit margin of 25.5% could reasonably be expected in the years after 1985; and

5) lost gross profits would equal lost net profits after 1985.

Regarding the years 1990 through 1993 the jury could reasonably have awarded plaintiff greater damages than those of $724,000 found by the Court on Count IV. The Court's award disallowed any recovery be-

yond 1991 and reduced plaintiff's recovery for 1990 by 50% and for 1991 by 75%, all because plaintiff had failed to prove a sufficient causal connection between the defendant's conduct and lost profits for those years and because of plaintiff's failure to mitigate its damages. Unlike the corrections of the errors underlying plaintiff's projections of lost profits, this ruling was a judgment call as to which fact finders might reasonably differ.

As stated in the February 7, 1995 Memorandum of Decision, it is highly probable that the jury arrived at its damages award by deducting $3,400,000 from Finn's lost profit calculation of $15,400,000 [4] because it too considered damages claimed for the 1990's too speculative and remote for wholesale adoption. We cannot say and do not now rule that the jury's resolution of issues of causation and mitigation was unreasonable. Assuming that the jury reduced Finn's total lost profits calculation by $3,400,000, it awarded plaintiff lost profit damages for the years 1990 through 1993 totalling $1,705,000. That award, which is $981,000 greater than the amount fixed by the Court pursuant to c. 93A, may stand and is reflected in the Court's order of remittitur. Specifically, when $981,000 is added to the Court's c. 93A lost profit award of $3,180,000 the result is the $4,161,000 ceiling stated in the Court's contemporaneous order of remittitur.

The last paragraph of the remittitur order, covering the contingency of plaintiff's rejection of the remittitur, presents a difficult procedural question, *viz.*, whether the Court may properly order a new trial as to damages on Count IV. By order dated March 13, 1995, the Court granted plaintiff's motion to strike defendant's motion for a new trial on the c. 93A claim. The relevant chronology and circumstances are set forth in the Court's Memorandum and Order of March 13, 1995. How, then, can the Court in effect now grant a motion previously denied? Principally because the damages findings by the Court and jury were inextricably linked.

4. In our c. 93A memorandum, we used the figure $15,433,000, derived from our review of a damages chart submitted by plaintiff post-trial, and attached to the February 7 memorandum as Appendix C. Our review of the trial transcript, however, indicates that Finn gave to the jury $15,400,000 as his estimate of the total lost profit damages suffered by plaintiff, and it is this figure from which the jury made its $3,400,000 deduction.

Also, at a pretrial conference the Court ruled that it would use an advisory jury and it did so. At page 27 of the Memorandum of Decision dated February 7, 1995, the Court referred to the weight it gave to the jury's findings of damages. We have in mind also the practice and preference of obtaining a jury's decision of factual issues common to jury and non-jury counts before undertaking to decide such issues in the non-jury context. Finally, we are mindful of the possibility of the defendant renewing its motion previously stricken within 10 days after a possible amendment of judgment implementing a remittitur or incorporating a future award of attorney's fees and costs.