COMMONWEALTH *vs.* TALBERT W. SWAN.

No. 93-P-1673.

Hampden. November 7, 1994. - May 12, 1995.

Present: DREBEN, GREENBERG, & LAURENCE, JJ.

*Practice, Criminal*, Assistance of counsel. *Larceny.*

At the trial of a complaint for larceny arising out of a dispute over an automobile repair, defense counsel's failure to assert and develop a defense based on the regulations adopted by the Attorney General governing automobile repair shops amounted to ineffective assistance of counsel and a new trial was required. [543-544]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on November 9, 1989.

On transfer to the jury session of that court, the case was tried before *Peter J. Rutherford*, J.

*Paul D. Barry* for the defendant.

*Margarita M. Whalen*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Convicted by a jury of six in the District Court of larceny of property over $250 (G. L. c. 266, § 30),[1] the defendant's appeal is based on the ground that he was denied effective assistance of counsel. We agree with the defendant and reverse.

While most of the facts as to the events leading up to the issuance of the complaint against the defendant are not in

---

[1]The judge sentenced the defendant to two years in a house of correction and, under G. L. c. 279, § 6A, ordered part of that sentence to be served on ten consecutive weekends. The balance of the sentence was suspended, and the defendant was placed on probation upon the conditions that he make restitution of $810.75 and perform 350 hours of community service. Weekend sentences under § 6A are permissible only for a term that does not exceed one year. The point, however, is rendered moot because of our reversal of the defendant's conviction.

dispute, a few crucial ones are. The defendant's case included his own testimony that on September 27, 1989, he called the Spartan Brake and Muffler Shop (Spartan) to check the price for a brake repair. He told an unidentified employee of Spartan that another shop had given him an estimate of $828, which was too high. Then, according to the defendant, the Spartan employee told him in the same conversation that they could perform the repair for half the price. As a result, that day the defendant had his car towed to Spartan from the other repair shop. The defendant also testified that, in a second telephone conversation later the same day, another employee, Daniel Sheehan, told him that the repair would cost over $800. In response, the defendant testified he refused permission to make the repair and said he would pick the car up after work.

No written estimate was offered in evidence. In his testimony, the owner of Spartan, Thomas Counos, admitted he never obtained a written authorization to perform the repairs. Sheehan, the employee of Spartan who performed the repairs, testified, however, that he had explained the work that had to be done when the defendant brought the car in, and he gave a written estimate of $810, which the defendant orally approved. On that point, the defendant's testimony sharply differed: he told the jury that when he left his car at the shop he was given no estimate of any kind.

When the defendant arrived back at Spartan in the late afternoon to pick up his car, the repair had been done, and Counos demanded $810 to release the car. The defendant gave him a check for the full amount, but Cuonos refused to release the car at that time. The next day, after telephoning the defendant's bank to confirm that there were sufficient funds to cover the check, Counos surrendered the car to him. Later, after discussing the situation with his wife, the defendant put a stop payment order on the check. After a failed attempt to collect the money, Counos sought and ultimately obtained a criminal complaint from the District Court.

For the defendant to prevail on his claim of ineffective assistance of counsel, we must find that "there was an error in the course of the trial (by defense counsel . . .) and . . . that [the] error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). Put another way, the question is whether counsel's conduct in the case "deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See also *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) (requiring "showing that better work might have accomplished something material for the defense"). In cases where tactical or strategic decisions of defense counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful. See *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979).

Automobile repair shops are subject to regulations adopted by the Attorney General under authority of G. L. c. 93A. Those regulations are reproduced in the margin.[2] It appears

---

[2]Title 940 Code Mass. Regs. § 5.05 (1986) provides in pertinent part as follows:

"(3) It is an unfair or deceptive act or practice for a repair shop to charge a customer for any repairs on a customer's motor vehicle unless either: (a) The repair shop has received a written authorization signed by the customer listing the specific repairs to be performed and the total price to be paid for such repairs, including parts and labor; or (b) The repair shop has received a written authorization signed by the customer listing the specific repairs to be performed and the charges for such repairs, including parts and labor, are displayed in a clear and conspicuous manner on the premises of the repair shop; or (c) If the repair shop is unable to obtain written authorization from the customer to perform specific repairs (as when the specific repairs to be performed on the vehicle are not known at the time the vehicle is delivered to the repair shop), the repair shop notifies the customer, prior to commencing any repairs, of the specific repairs to be performed on the vehicle and the total price to be charged to the customer for such repairs, including parts and labor, and obtains the customer's authorization to perform such repairs; or (d) The repair shop has obtained, prior to commencing repair of the vehicle, a written waiver . . . executed by the customer . . . .

"(5) It is an unfair or deceptive act or practice for a repair shop which receives any oral authorization from a customer . . . to fail to maintain written records containing the following information: (a) the date and time the authorization was received; (b) the name of the repair shop employee

Commonwealth *v.* Swan.

from the regulatory scheme that failure to secure a customer's written authorization before undertaking automobile repair work may amount to an unfair or deceptive practice. If, under the third paragraph of the regulation, the repair shop is unable to obtain written permission, it must notify the customer prior to starting the work of the nature and cost of the needed repairs, and the fifth paragraph of the regulation requires the repair shop to maintain written records containing specific information about any verbal authorization received from a customer.

Counsel decided at the outset to use Spartan's alleged violation of the regulations as an essential part of the defense. In his opening speech to the jury, he stated that "[t]here is a question about whether that work [on his car] was authorized or not. The evidence will show, as is mandated by the Attorney General's regulations, that [the defendant] never authorized that work to be done. That, in essence, is what you're going to be deciding today." It is also clear from the questions posed by the defense counsel during his cross-examination of Counos and Sheehan that he was trying to establish that various provisions of the regulations were violated. For example, in the course of questioning Counos, defense counsel began to ask him about his knowledge of the regulations. The prosecutor objected, and the judge sustained the objection. Defense counsel made no attempt to explain their relevance. Nor did he make an offer of proof in the form of a certified copy of the regulations.

Rebuffed at this early stage of the trial, defense counsel abandoned the matter altogether. He failed to develop this defense at any later stage; nor did he request that the judge, who under G. L. c. 30A, § 6, could take judicial notice of State regulations (see *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 772 n.12 [1980]; Flanagan, Trial Practice

receiving the oral authorization and the name of the person making the authorization; (c) a statement of the exact authorization received; and (d) if the authorization was received over the telephone and the repair shop placed the call, the telephone number called."

§ 205 [1993]), to instruct the jury as to automobile shop regulations.

We cannot explain away defense counsel's lapse as a tactical decision. Contrast *Commonwealth* v. *Sielicki*, 391 Mass. 377, 379 (1984); *Breese* v. *Commonwealth*, 415 Mass. 249, 251 (1993). Defense counsel should have introduced the regulations in evidence. If the jury found that Spartan failed to comply with the regulations, it would have seriously weakened the government's contention that the defendant was obligated to pay for the repairs. This applies to both possible theories of larceny in the case. The defendant could not be convicted of larceny of the money owed to Spartan if Spartan had no legal right to charge for the repairs. Nor could the defendant be convicted of larceny of the vehicle in violation of Spartan's garage keeper's lien, G. L. c. 255, § 25. See *Doody* v. *Collins*, 223 Mass. 332 (1916). That statute only permits a lien for "proper charges due . . . [for the] storage and care" of the automobile. *Id.* at 334. Because the regulations provide that it is an unfair or deceptive act or practice to "charge a customer for any [unauthorized] repairs," the jury could have found that there were no "proper charges" triggering the lien.[3] In the circumstances of this case, defense counsel's error was "so flagrant that [we] can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Marzullo* v. *Maryland*, 561 F.2d 540, 544 (4th Cir. 1977).[4]

So long as the jury were kept in the dark concerning the requirements contained in the regulations, it increased the likelihood of an erroneous result in the trial. "In general,

[3]There is no common law garage keeper's lien. *North End Auto Park, Inc.* v. *Petringa Trucking Co.*, 337 Mass. 618, 620 (1958).

[4]The result (thus far) in this case should be compared with the result in *Wyler* v. *Bonnell Motors, Inc.*, 35 Mass. App. Ct. 563 (1993), in which "a difference of opinion about an automobile repair bill of $502.33 result[ed] in an aggregate judgment for the customer of $120,418" (reduced by nearly half on appeal). *Ibid.* As here, the car dealer filed an application for a criminal complaint against the customer, but the complaint was later dismissed, and there was also in that case a "counterattack" by the customer — "an action for abuse of process and damages under G. L. c. 93A." *Id.* at 566.

failure to act is not a basis for finding ineffective assistance of counsel," *Commonwealth* v. *Frisano*, 21 Mass. App. Ct. 551, 555 (1986), but in this case defense counsel presented a defense of justification for the defendant's actions in his opening statement. That defense was never developed, a gaffe that amounted to ineffective assistance of counsel.[5]

*Judgment reversed.*
*Verdict set aside.*

---

[5]Our conclusion in this case that there was ineffective assistance is not tied to evidentiary issues, and thus the claim need not have been raised first by way of a motion for new trial under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). Contrast *Commonwealth* v. *Brookins*, 416 Mass. 97, 104 (1993). We also note that the defendant's claim that his motion for a required finding of not guilty was wrongly denied is without merit.