NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1195

GOVERNO LAW FIRM LLC

vs.

KENDRA ANN BERGERON & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Governo Law Firm LLC (GLF), brought this action against the defendants, six former GLF employees (attorney defendants) and the former employees' new law firm, CMBG3 Law LLC (CMBG3), after the attorney defendants secretly copied electronic files and databases while still employed at GLF and took those materials with them when opening a competing firm.  A Superior Court jury found the defendants liable for conversion, among other claims, and awarded GLF $900,000 as fair

---

[1] Jeniffer A.P. Carson, Bryna Rosen Misiura, David A. Goldman, Brendan J. Gaughan, John P. Gardella, and CMBG3 Law LLC.

compensation for the misuse of its documents or databases.[2] Although the jury also made a binding determination that the defendants did not violate G. L. c. 93A, § 11, the Supreme Judicial Court (SJC) vacated that portion of the judgment on appeal and remanded the matter to the Superior Court for a new trial on that claim. See Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 202 (2021) (Governo). After a bench trial, the same trial judge found that the defendants did not violate c. 93A because their unfair and deceptive conduct did not harm or injure GLF. The judge also found that the defendants violated two permanent injunctions, albeit not willfully, but declined to impose sanctions on GLF's complaints for contempt.

In this appeal from the ensuing judgment, dated March 6, 2023, GLF argues that the judge erred in finding that GLF suffered no harm or injury from the defendants' conduct, both because the judge was bound by the jury verdict on the conversion claim, and because GLF proved that element of the G. L. c. 93A claim. GLF further argues that it was entitled to sanctions for the defendants' violations of the injunctions. Because we conclude that some of the judge's findings on the

---

[2] The jury also found the attorney defendants liable for breach of the duty of loyalty, and some of the defendants liable for conspiracy. The jury found that none of the defendants misappropriated trade secrets, however.

issue of harm or injury were clear error, we reverse so much of the judgment as relates to the claim under c. 93A, and we remand that claim for entry of a new judgment in favor of GLF and for an assessment of damages consistent with this decision.  We otherwise affirm the judgment.

Background.  The decision in the prior appeal describes in detail the background of this case.  See Governo, 487 Mass. at 190-192.  After the second trial, the judge found the following facts.

1.  Defendants' departure from GLF.  David Governo is the sole owner and equity partner of GLF.  Between 2000 and 2008, he hired the attorney defendants to work in the firm's asbestos litigation practice, with each attorney eventually becoming a nonequity partner.  At least as of 2006, the six attorney defendants and one other nonequity partner ran the firm, grew its business, and represented its clients with essentially no involvement from Governo.

In 2016, Governo began to discuss the possibility of selling GLF to the nonequity partners.  The attorney defendants initially were interested in this course -- an option they dubbed their "plan A" -- but negotiations proved unsuccessful.  Specifically, the nonequity partners rejected Governo's offer to sell the firm for $9.25 million in August 2016.  Governo then

3

declined the nonequity partners' counteroffer of $2.25 million and refused to negotiate further.

After these failed negotiations, the attorney defendants moved forward with their "plan B." Under this plan, they prepared to leave GLF and start their own firm, anticipating that almost all of GLF's clients would follow them to the new firm. To that end, during fall 2016, some of the attorney defendants secretly copied electronic materials (discussed more fully below) from GLF onto "thumb drives" and an external hard drive (WD drive) and took them from the firm.[3] All attorney defendants were aware of and approved of this conduct.

Thereafter, on November 18, 2016, the nonequity partners met with Governo and gave him a choice: sell GLF for $1.5 million plus all revenue collected through the end of that year, or all nonequity partners would resign. Governo rejected the offer to sell the firm but convinced one nonequity partner to stay at GLF. Two days later, Governo told the attorney defendants via e-mail message that he was terminating their employment effective immediately, and asked them to confirm that they had not taken or downloaded any files from GLF; the attorney defendants did not respond.

---

[3] GLF continued to have access to these materials both before and after they were copied by the attorney defendants.

4

The attorney defendants then promptly formed CMBG3 and brought the copied materials from GLF with them. Ultimately, the majority of GLF's clients, representing more than ninety-five percent of GLF's annual revenue, decided to transfer their asbestos litigation business to CMBG3.

2. Copied materials from GLF. The materials the attorney defendants copied included "essentially all" files and databases used to represent GLF's clients, as well as a "large volume" of GLF's administrative materials. Among the copied materials were six databases that GLF created via "FileMaker Pro" software to organize, track, and store client file materials (FMP databases).[4] The first of the FMP databases, the asbestos case management database, tracked key information about each active asbestos case, including deposition summaries and notes from attorneys on their mental impressions of the case and settlement discussions with opposing counsel. Most of the information in this database was not saved elsewhere, such as in the client files. The second FMP database, the talc database, was used to store and locate literature and analyses gathered and prepared

_____

[4] On appeal, GLF does not challenge the judge's finding that certain materials, known as the 8500 New Asbestos Files, were part of the files belonging to clients who transferred their legal work to CMBG3. Therefore, we do not further discuss those files, other than to note that the FMP databases provided the mechanism that GLF used to track them.

5

for GLF clients who were involved in talc litigation, an emerging subspecialty of GLF. The third, the mail log database, contained a list (but not the contents) of all case-related physical and electronic mail received by GLF, apart from e-mail messages. This database was used to generate chronological lists of correspondences received by case. The fourth database, the bankruptcy trust database, was used to track payments from bankruptcy trusts to plaintiffs in asbestos cases. That database also linked to publicly-available documents that had been gathered by GLF and stored elsewhere on GLF's system. Finally, the Eckel and ECR databases were developed for two clients whom GLF represented as national coordinating counsel in all of their asbestos-related litigation. The attorney defendants also copied most of GLF's administrative materials, including GLF's client contact list; employee handbook; asbestos litigation procedures manual; office procedures manual; marketing, training, and billing manuals; summary of asbestos litigation reporting requirements; and client service assessments and plans.

After the attorney defendants formed CMBG3, defendant Bryna Rosen Misiura placed most of the copied materials onto a laptop (alternative laptop). Misiura was the only person who used the alternative laptop, and she served as a de facto gatekeeper when others wanted to use any materials copied from GLF; she would

not grant the other attorney defendants access to those materials unless they convinced her "that a particular document or item was critically important to defending a client," and that they could not obtain a copy through other means. Misiura only accessed client files that belonged to clients who transferred their representation to CMBG3, although other client files were still copied and brought to CMBG3.

Of the administrative materials, the attorney defendants also accessed the client contact list and employee handbook. Specifically, shortly after their departures from GLF, the attorney defendants used addresses from the client contact list to notify clients that they had left the firm and opened CMBG3 (notification letters). Additionally, the attorney defendants made minor edits to GLF's employee handbook and submitted it to their insurance broker to obtain insurance coverage for CMBG3.

3. General Laws c. 93A claim. On the c. 93A claim, the judge determined that the defendants acted unfairly and deceptively when they secretly copied GLF's electronic materials and took them to CMBG3 before the new firm had any clients, but concluded that GLF suffered no loss or injury from that conduct. On that point, the judge found that the defendants never accessed most of the materials they took from GLF.

Of the materials the defendants accessed, the judge found that the FMP databases were client file materials that had been

7

paid for by and belonged to the clients who eventually transferred to CMBG3.  Specifically, the judge found that the departing GLF clients were entitled to receive exported electronic versions of all portions of the FMP databases in a format that maintained the same "indexing, cross-linking, database structure, and other organization that they had paid GLF to create and maintain for them."

As to the administrative files, the judge concluded that the attorney defendants were entitled to send notification letters to their clients after they left GLF.  Although the attorney defendants used the client contact list from the copied materials to do so, according to the judge, they could have sent the same letters through other means.  Moreover, the judge found that GLF "implicitly authorized [the] defendants to keep and use" the employee handbook because GLF's office manager later sent copies of the handbook (among other materials) to the defendants.  Ultimately, the judge found that "GLF suffered no loss of any kind from [the] defendants' unfair or deceptive conduct, and [the] defendants did not earn any profits from any improper use of materials that they copied and took from GLF."

4.  Contempt complaints.  After the first trial, the judge issued a permanent injunction that required the defendants to delete most of the copied materials (unless later obtained from some other source), and to certify their compliance by October

2019 (first injunction).  The judge later issued another injunction consistent with the SJC's remand order that expanded the scope of the materials to be deleted to include the administrative materials (second injunction).  See Governo, 487 Mass. at 197-198.  That injunction required certification of compliance by June 2021.

GLF then filed complaints alleging that the defendants were in contempt of the injunctions, and the contempt proceedings were consolidated with the retrial on the c. 93A claim.  After trial, the judge found that, while the defendants did not fully comply with the deletion and certification requirements of the injunctions, the defendants never used any materials kept in violation of the injunctions, none of the violations were willful, and the defendants acted in good faith to comply.

The violations were as follows.  The defendants incorrectly certified compliance with the first injunction in October 2019 based on their mistaken belief that their outside computer expert had wiped all devices of the copied materials.  The defendants learned that their belief was mistaken, and that their first trial counsel had retained some copied materials, in May 2021, and they promptly notified GLF.  Then, in July 2021, defendant Misiura remembered that prior counsel previously returned the WD drive to her, and so she provided the drive to GLF through successor counsel.  Finally, despite certifying

9

compliance with the injunctions in January and February 2022, the defendants discovered in the middle of the second trial that Misiura had a thumb drive that contained some copied materials, all of which belonged to then-active clients of CMBG3. Ultimately, the judge found that the defendants were in full compliance with the injunctions as of June 2022. The judge declined to impose sanctions on the defendants or award attorney's fees or costs to GLF, however, because "GLF brought and pressed its complaints for contempt solely to punish [the] defendants."

Discussion. 1. General Laws c. 93A, § 11. a. Jury verdict. GLF first argues that, under the doctrine of issue preclusion, the judge was bound to find a knowing and willful violation of c. 93A based on the prior jury verdict and entry of final judgment on the conversion claim in favor of GLF. GLF raised this argument before the second trial through a motion for partial summary judgment.[5] In denying that motion, the judge rejected the argument that the jury verdict had a preclusive effect, and explained that the SJC's remand order required him "to conduct an entirely new trial on the c. 93A claim."[6]

_____

[5] GLF's motion sufficiently preserved the issue for appellate review.

[6] In the prior appeal, the SJC found that the jury were erroneously instructed that any conduct that occurred while the attorney defendants were employed by GLF was "irrelevant" to the

10

We turn then to the issue whether the judge was bound by the prior verdict on the conversion claim. In a similar context, we have found that even after a jury trial and entry of separate and final judgment on a non-93A claim, "the subject matter of a c. 93A claim is sufficiently distinct so that a judge sitting independently on the c. 93A claim may arrive at findings different from those of the jury sitting on the non-93A claims." Wyler v. Bonnell Motors, Inc., 35 Mass. App. Ct. 563, 568 (1993). The same reasoning applies here where the judge opted to hold a bench trial on remand. See Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 186-187 (2013) (judge's findings on causation may conflict with jury's findings on parallel common-law claim and nonbinding advisory opinion on c. 93A claim, if judge reserved claim); Chamberlayne Sch. & Chamberlayne Jr. College v. Banker, 30 Mass. App. Ct. 346, 354-355 (1991) ("the broader scope and more flexible guidelines of

---

c. 93A claim, including "negotiations, copying of materials, [and] anything else" occurring before the attorney defendants' separation from GLF. Governo, 487 Mass. at 193. The SJC distinguished the facts here from those of a purely intracompany dispute where G. L. c. 93A, § 11, ordinarily does not apply; the SJC explained, "[t]hat the individuals were employees at the time of the misappropriation does not shield them from liability under G. L. c. 93A, § 11, where they subsequently used the ill-gotten materials to compete with their now-former employer." Id. at 196. Additionally, the SJC noted that GLF's claim "required the jury to consider that the attorney defendants stole GLF's materials in order to determine whether the subsequent use of these materials was unfair or deceptive." Id.

11

c. 93A permit a judge to make [independent] decisions under c. 93A without being constrained by the jury's findings" [citation omitted]).

To the extent GLF argues that this case is distinguishable because the judge decided to submit the claim to the jury for a binding determination before the first trial, we disagree. See Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 22 n.31, cert. denied, 522 U.S. 1015 (1997) (judge did not err in treating jury verdict as advisory where judge "initially stated that 'the jury [will] decide the [c.] 93A claim[s],' but chose after trial to issue his own findings in order to avoid a retrial if one of his key jury instructions was found to be erroneous"); Wyler, 35 Mass. App. Ct. at 567-568 (separate and final judgment on abuse of process claim after jury trial had no preclusive effect on c. 93A claim tried before judge). On remand, only a c. 93A claim remained, and no right to a jury trial exists on that claim. See, e.g., Nei v. Burley, 388 Mass. 307, 315 (1983). Thus, the judge was free to decide the 93A question independently based on the evidence presented at the second trial. See Wyler, supra at 566. Cf. Acushnet Fed. Credit Union v. Roderick, 26 Mass. App. Ct. 604, 606, 608 (1988) (on retrial, judge could submit c. 93A claim to jury for binding determination after reserving claim at first trial).

12

b. Loss or harm. GLF next argues that the judge erred in finding that there was no loss or harm resulting from the defendants' unfair and deceptive conduct.[7] "We accept the trial judge's findings of fact on the c. 93A issue absent clear error, but review [the judge's] applications of law de novo." Exhibit Source, Inc. v. Wells Ave. Business Ctr., LLC, 94 Mass. App. Ct. 497, 500 n.3 (2018). "A ruling that conduct violates [c. 93A] is a legal, not a factual, determination[,] . . . . [a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact" (citation omitted). Klairmont, 465 Mass. at 171.

To prevail on a claim under G. L. c. 93A, § 11, a plaintiff must establish

> "(1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by G. L. c. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." (Footnote omitted.)

Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 820 (2014). The statute authorizes double or treble damages if

---

[7] For the same reasons discussed in the previous section, we reject GLF's argument that, on the c. 93A claim, the judge was bound to accept $915,000 (the amount of the jury's award, plus costs) as the amount of "actual damages" based on the judgment entered after the earlier trial. G. L. c. 93A, § 11. See Wyler, 35 Mass. App. Ct. at 568 (judge deciding 93A claim is not bound by jury's assessment of damages on non-93A claim).

13

the defendant's unlawful conduct was "willful or knowing."
G. L. c. 93A, § 11.

As the judge in the present case found, the attorney "defendants acted unfairly and deceptively when they secretly copied GLF client file materials and administrative materials and took them to their new law firm without permission from GLF and before they had any clients." Yet, the judge found no resulting injury to GLF because, essentially, the defendants only accessed copied materials that belonged to clients who had transferred to CMBG3, or that the attorney defendants were otherwise authorized to use after they left GLF.[8] As to the FMP databases, the findings underlying this conclusion are clearly erroneous.[9]

---

[8] Although GLF argues that its loss of property (i.e., the copied materials) was sufficient in and of itself to establish damages, we disagree. There must be some connection between the loss of that property and the loss suffered by GLF (through, for instance, a subsequent misuse of that property) to establish damages. See Governo, 487 Mass. at 195-196; Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 839 (1972), S.C., 377 Mass. 159 (1979). There was no such connection here.

[9] The judge's findings on the administrative materials, however, are not erroneous. The attorney defendants were free to notify clients of their move to CMBG3, see, e.g., Meehan v. Shaughnessy, 404 Mass. 419, 437 & n.15 (1989), and the judge found that the attorney defendants could have obtained the client addresses through other means for their notification letters. We also discern no error in the judge's finding that, considering GLF's treatment of its employee handbook, that handbook was not confidential and, thus, the defendants' subsequent use of that handbook did not give rise to a violation of c. 93A. See Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 169-

14

The judge concluded that "almost everything" in the FMP databases -- including the organizational system and file structure -- belonged to GLF's clients and not the firm. In so holding, the judge employed a "thought experiment," likening the FMP databases to a hypothetical paper filing system that a firm might have created in "the pre-electronic age of litigation." Such a system might include indexed binders, subfolders, and indices to make it "easy to locate items within those voluminous materials and work product memoranda" so the firm could use the same materials to defend the same clients in future cases. The judge reasoned that, if the clients paid the firm for its work to develop and maintain the system, a client leaving the firm "would be entitled to take with [it] not only all of [its] litigation-related documents and work product gathered and created on its behalf, but also the file structure and indices the client had paid the old firm to create and maintain for it."

To be sure, a departing client was entitled to its own client file under Mass. R. Prof. C. 1.16 (e), as appearing in 471 Mass. 1396 (2015) (rule 1.16).[10] See Malonis v. Harrington,

_____

170 (1991), S.C., 417 Mass. 484 (1994) ("the extent of measures taken by the employer to guard the secrecy of the information" is relevant to whether that information is confidential [citation omitted]).

[10] We cite to the version of the rule in effect when the attorney defendants left GLF. We understand this version of the rule to have encompassed materials in electronic form.

15

442 Mass. 692, 701 (2004) ("a discharged attorney must take all reasonable steps to protect the[ir] client's interests, including surrendering papers and property to which the client is entitled"). The organizational system developed by the attorney defendants while they were employed at GLF to streamline their practice does not fit squarely into the type of materials the rule required be transferred, however.[11] While we agree with the trial judge that a lawyer is not free to provide client material to a departing client in an organizational mess, the departing client is not entitled to the entire databases

---

[11] The rule required a lawyer to make available to a former client, on request,

"all papers, documents, and other materials the client supplied to the lawyer.

"all pleadings and other papers filed with or by the court or served by or upon any party.

"all investigatory or discovery documents except those for which the client is then obligated to pay under the fee agreement but has not paid, including but not limited to medical records, photographs, tapes, disks, investigative reports, expert reports, depositions, and demonstrative evidence."

Rule 1.16 (e) (1)-(3). The rule also required a lawyer to provide copies of the lawyer's "work product." Rule 1.16 (e) (4), (5). Work product was defined as "documents and tangible things prepared in the course of the representation of the client by the lawyer or at the lawyer's direction by his or her employee, agent, or consultant. . . . Examples of work product include without limitation legal research, records of witness interviews, reports of negotiations, and correspondence." Rule 1.16 (e) (6).

16

that were developed to efficiently represent multiple clients defending against similar claims, even if that client paid for some portion of GLF's time creating and updating those databases.[12] Indeed, the fields and layouts of the FMP databases were not part of the individual client files, and were included so information could be searched across different clients. Thus, we conclude that the finding that each departing client was entitled to the "indexing, cross-linking, database structure, and other organization that they had paid GLF to create and maintain for them" was clear error.

---

[12] This conclusion is consistent with the interpretation by the American Bar Association (ABA), of the analogous model rules:

> "Upon the termination of a representation, a lawyer is required under Model Rules 1.15 and 1.16(d) to take steps to the extent reasonably practicable to protect a client's interest, and such steps include surrendering to the former client papers and property to which the former client is entitled such as materials provided to the lawyer, legal documents filed or executed, and such other papers and properties identified in this opinion. A client is not entitled to papers and property that the lawyer generated for the lawyer's own purpose in working on the client's matter. However, when the lawyer's representation of the client in a matter is terminated before the matter is completed, protection of the former client's interest may require that certain materials the lawyer generated for the lawyer's own purpose be provided to the client."

ABA Standing Committee on Ethics and Professional Responsibility Formal Op. 471, at 7 (2015). Examples of the types of materials generated for a lawyer's own purpose that may be turned over for active cases include internal notes and memoranda for which no final product has yet emerged. See id. at 6.

17

GLF did not provide exported copies of the entire FMP databases to the defendants, but instead supplied information pulled from the databases, saved in portable document format (.pdf) and Microsoft Word documents.[13]  To use that information in the same way they did at GLF, the attorney defendants would have been required to rebuild the databases and reenter the data record-by-record.  Instead, Misiura used the copied materials "to find and access discovery materials, investigatory materials, case history summaries, or other materials" while at CMBG3.  This evidence was adequate to establish that the defendants used the copied materials to compete with GLF, which was unfair and deceptive as a matter of law.  See Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172-173 (1991), S.C., 417 Mass. 484 (1994) (employee who plans to leave and compete with employer "may not carry away certain information"); Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 839 (1972), S.C., 377 Mass. 159 (1979) ("although an employee may carry away and use general skill or knowledge acquired during the course of his employment, he may be enjoined from using or disclosing confidential information so acquired" [citation omitted]).  GLF was harmed by that use of the copied materials, and it is thus entitled to

_____

[13] Whether such production complied with GLF's ethical obligations under rule 1.16 is beyond the scope of this appeal.

judgment in its favor on the c. 93A claim.  This matter must be remanded for entry of a new judgment and an assessment of damages.[14]

c.  Damages.  To provide guidance on remand, we note that, where an employee misuses confidential materials to compete with a former employer, the appropriate measure of damages is "the defendant's profits realized from his tortious conduct, the plaintiff's lost profits, or a reasonable royalty."  Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 381 Mass. 1, 12 (1980).  In this scenario, a plaintiff is ordinarily "entitled to the profit he would have made had his secret not been unlawfully used, but not less than the monetary gain which the defendant reaped from his improper acts."  Specialized Tech. Resources, Inc. v. JPS Elastomerics Corp., 80 Mass. App. Ct. 841, 850 (2011), quoting Jet Spray Cooler, Inc., 377 Mass. at 170.  Even if the scope of the monetary loss is difficult to quantify, disgorgement of profits still is an appropriate remedy for a defendant's misuse of confidential information.  See Specialized Tech. Resources, Inc., supra.  Yet, to the extent the attorney defendants here dispute that they profited from

_____

[14] GLF requested that the matter be assigned to a different judge in the event of a remand.  We decline to direct reassignment of the case, particularly given the limited nature of the issues to be decided on remand.

their misuse of the copied materials, GLF should be permitted on remand to present expert evidence establishing damages based on a reasonable royalty rate.[15]  If GLF is unable to prove a specific loss and the defendants made no actual profits on the misuse of the copied materials, that may be the appropriate method of assessing damages.  See Curtiss-Wright Corp., supra at 11 & n.9; Jet Spray Cooler, Inc., supra at 171 n.10.

The judge also must assess the appropriate amount to award for attorney's fees.  Based on the undisputed facts underpinning the attorney defendants' c. 93A violation, we conclude that GLF established that the violation was "willful or knowing," such that it is entitled to multiple damages.[16]  G. L. c. 93A, § 11. See Renovator's Supply, Inc. v. Sovereign Bank, 72 Mass. App. Ct. 419, 431 (2008) (judge's credibility determinations on issue whether conduct was willful are entitled to "special deference").

2.  Contempt.  GLF also challenges the judge's decision not to impose sanctions for the defendants' violations of the

_____

[15] Although the trial judge concluded that GLF waived this issue, we disagree.  GLF sought to admit expert evidence on the issue prior to both trials and, in both instances, its motion was denied.

[16] Additionally, on remand, the judge may consider whether any or all of the $1,925 that GLF incurred in prelitigation attorney's fees is recoverable under c. 93A.

20

injunctions. We review that decision for an abuse of discretion and discern none. See Wong v. Luu, 472 Mass. 208, 220 (2015). The judge's decision was amply supported by his findings that the defendants were in compliance with the injunctions at the time of the second trial, their violations were inadvertent, and they had not used the wrongfully-retained materials after the injunctions issued. See Labor Relations Comm'n v. Salem Teachers Union, Local 1258, MFT, AFT, AFL-CIO, 46 Mass. App. Ct. 431, 435 (1999) ("sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained" [quotation and citation omitted]).

Conclusion. So much of the judgment dated March 6, 2023, as entered in favor of the defendants under G. L. c. 93A, § 11, is reversed, and that claim is remanded for entry of a new judgment in favor of GLF and for a determination of damages,

attorney's fees, and costs.[17]  In all other respects, the judgment is affirmed.

So ordered.

By the Court (Rubin, Desmond, & Hand, JJ.[18]),

Clerk

Entered:  April 4, 2025.

---

[17] As the prevailing party on a claim under G. L. c. 93A, § 11, GLF is entitled to appellate attorney's fees.  Within fourteen days of the date of this decision, GLF may submit an application for appellate attorney's fees and costs with supporting documentation, in accordance with Fabre v. Walton, 441 Mass. 9, 10-11 (2004).  The defendants will have fourteen days thereafter after in which to file a response.

[18] The panelists are listed in order of seniority.