JOHN W. KOHL *vs.* SILVER LAKE MOTORS, INC.

Middlesex.    December 3, 1975. — March 2, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Consumer Protection Act.   Practice, Civil,* Consumer protection case.

Where a buyer agreed to purchase a specific automobile and the seller, in violation of the consumer protection act, G. L. c. 93A, substituted another automobile which lacked certain optional features on the original vehicle and in which the automatic transmission had been replaced by the seller because it was defective, damages resulting from the defective transmission were not a foreseeable result of the seller's deception and were properly excluded in determining under c. 93A the "injury actually suffered by the buyer." [799-801]

Attorney's fees incurred by a buyer are not to be considered in measuring the reasonableness of a seller's tender of settlement under § 9 (3) of G. L. c. 93A, the consumer protection act. [801]

In a suit under G. L. c. 93A by a buyer who had agreed to purchase a specific automobile against the seller who had substituted another automobile lacking certain optional features represented to be on the original and, for reasons unrelated to the seller's deception, requiring frequent repairs, the trial judge was warranted in ruling that the seller's offer either to replace the substituted vehicle, or to allow the full amount paid by the buyer toward purchase of the following year's model, or to refund the purchase price in exchange for the vehicle was reasonable and in awarding c. 93A damages of $500. [801-803]

In an action under G. L. c. 93A a buyer who has rejected a reasonable offer of settlement by the seller cannot recover more than the amount of the offer and is not entitled to multiple damages even if the seller's violation of the consumer protection act was knowing or wilful. [803]

BILL IN EQUITY filed in the Superior Court on December 20, 1973.

The suit was heard by *Cross, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Kenneth E. Karger (Donald J. O'Bell* with him) for the plaintiff.

*John W. Gahan, III,* for the defendant.

WILKINS, J. This case presents further questions arising under G.L. c. 93A, the consumer protection act. See *York* v. *Sullivan, ante,* 157 (1975), where our earlier opinions are collected. Here we consider the consequences, under G. L. c. 93A, § 9 (3), of a written tender of settlement made and filed by Silver Lake Motors, Inc. (Silver Lake), which sold a 1973 Dodge Dart automobile to the plaintiff (buyer).

In his appeal, the buyer challenges the judge's conclusion that Silver Lake's tender of settlement was "reasonable in relation to the injury actually suffered" by the buyer and that, as a result, the buyer's maximum recovery from Silver Lake for its violation of the consumer protection act was limited to the amount of that offer. G. L. c. 93A, § 9 (3). The buyer argues additionally that, even if Silver Lake's settlement offer was

reasonable, its conduct constituted a wilful and knowing violation of G. L. c. 93A, § 2, and that, therefore, he is entitled to multiple damages. We hold that the record adequately supports the judge's conclusion that Silver Lake's tender of settlement was reasonable under G. L. c. 93A, § 9 (3), and that, if a judge makes such a determination, a buyer's recovery in an action under G. L. c. 93A may not exceed the relief tendered (plus attorney's fees incurred prior to the date of the buyer's rejection of the tender [G. L. c. 93A, § 9 (4)]), even if the seller's conduct was a wilful or knowing violation of the act. Thus we need not consider the buyer's challenge to the judge's finding that Silver Lake's violations of G. L. c. 93A, § 2, were not "willful or knowing." See G. L. c. 93A, § 9 (3).

In July, 1973, the buyer entered into an agreement to purchase a specific, new 1973 Dodge Dart which was in stock, with delivery to be made at a later date. For reasons which do not appear in the record, Silver Lake then sold that vehicle to someone else. On September 10, 1973, without advising the buyer, Silver Lake sold a different 1973 Dodge Dart to the buyer. That vehicle looked much like the original vehicle which the buyer had agreed to purchase, but it lacked certain optional features which had been represented to be on the original vehicle.[1] In addition, the original automatic transmission on the vehicle actually delivered had been replaced by Silver Lake because it was defective. The buyer became aware of the substitution of vehicles in the latter part of October, 1973.

The judge found that the delivered vehicle required "excessively frequent and extensive repairs" but that Silver Lake had done its best to make requested repairs

---

[1] The delivered vehicle lacked a remote control mirror, variable speed windshield wipers, a day-night mirror, a deluxe insulation package, light package, wheel lip mouldings, and upper door frame mouldings. The manufacturer's suggested retail price for these undelivered optional items totaled $122.85.

without charge. Although the buyer continued to use the vehicle, he was forced to rent other automobiles for short periods of time, while Silver Lake was attempting to repair his vehicle.

On November 2, 1973, the buyer sent a written demand for relief to Silver Lake.[2] Silver Lake responded with a written tender of settlement, which the buyer rejected and which the judge has found to be "reasonable in relation to the injury actually suffered by the . . . [buyer]."[3]

---

[2] The demand, a letter from the buyer's attorney, asserted that the substitution of vehicles was in violation of G. L. c. 93A, § 2; that the vehicle had needed extensive repairs; and that it lacked optional features which were on or represented to be on the original vehicle. The letter demanded refund of the entire purchase price and further damages of $1,934.38. Although not itemized, the further damages were attributed to the rental cost of vehicles used while the buyer's vehicle was being repaired; the cost of the missing optional items; the sales and excise taxes paid on the vehicle; registration and title fees; insurance premiums; "the loss of time at work and the potential effect of such absence upon his continued employment"; "extreme frustration, discomfort and inconvenience" caused to the buyer and his family; and his attorney's fees to date. The letter concluded by purporting to revoke acceptance of the vehicle and asking for instructions concerning its return. There is no question here concerning the adequacy of the buyer's demand letter. See Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812 (1975).

[3] Silver Lake's response, by letter dated November 30, 1973, made the following offers:

"Silver Lake Dodge is willing to replace your 1973 Dodge car at no cost to you with any automobile that we have in stock with comparable equipment, crediting or debiting you with any equipment that is more or less than you had purchased on your present 1973 Dodge car.

"Silver Lake Dodge also agrees to allow you to purchase a new 1974 Dodge of your choice allowing you the full amount of money paid to Silver Lake Dodge on your 1973 Dodge Dart in trade.

"Silver Lake Dodge also offers a third option of the return of the 1973 Dodge Dart in undamaged condition for which we will return all monies received by Silver Lake Dodge in payment of the 1973 Dodge Dart, Serial No. LH41-C3R-353859 by you.

"These offers are valid until December 15, 1973."

The judge ruled that the substitution of the vehicle and the absence of the optional features represented to be on the first vehicle were violations of G. L. c. 93A, § 2 (a), but that these were not wilful or knowing violations. He assessed damages of $500 for these violations and allowed the buyer $250 as reasonable attorney's fees and costs incurred on or before November 30, 1973, the date of the letter tendering the offers of settlement. See G. L. c. 93A, § 9 (4). He ruled that the replacement of the original, defective transmission was not a violation of G. L. c. 93A and that the unsatisfactory performance of the vehicle was a breach of contract but not a violation of G. L. c. 93A. He assessed damages of $300 for breach of contract.

The buyer argues that the judge was wrong as matter of law in ruling that the relief tendered by Silver Lake was "reasonable in relation to the injury actually suffered" by the buyer. A determination of reasonableness normally is a question of fact. We think that a seller asserting the protection of the statutory limitation of damages appearing in § 9 (3) has the burden of proving the reasonableness of the settlement tendered. Cf. *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 694 (1975); *Commonwealth* v. *DeCotis,* 366 Mass. 234, 240 (1974). In any analysis of the tender of settlement in relation to the buyer's injury, we must consider (1) whether, as the buyer argues, damages sustained because of the defective transmission (which were treated as contract damages by the judge) should be regarded as an injury suffered because of Silver Lake's violation of G. L. c. 93A and (2) whether, as the buyer argues further, attorney's fees incurred by a buyer prior to the date on which a reasonable settlement offer is rejected must be considered in determining the reasonableness of a settlement offer.[4]

---

[4] Those provisions of G. L. c. 93A which are most significant in this proceeding appear in paragraphs (3) and (4) of § 9, inserted by

The record does not show that the buyer's damages resulting from the defective transmission were attributable to Silver Lake's violation of the consumer protection act, and the judge correctly excluded them in determining the "injury actually suffered" by the buyer under G. L. c. 93A. A seller who violates G. L. c. 93A, § 2, is not thereby a guarantor against defects in the item sold which are unrelated to the deceptive act or practice. Under G. L. c. 93A, § 9 (1), a seller is liable for damages if the buyer suffered "any loss of money or property . . . as a result of" the seller's use of a deceptive act or practice. This language indicates that there must be a

---

St. 1969, c. 690. Paragraph (3) reads in part (with certain portions italicized for emphasis):

"(3) At least thirty days prior to the filing of any . . . [action for damages or equitable relief for a violation of G. L. c. 93A, § 2, or applicable regulations of the Attorney General], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. *Any person receiving such a demand for relief who,* within thirty days of the mailing or delivery of the demand for relief, *makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases,* if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two."

Paragraph (4) reads as follows:

"(4) If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action; provided, however, *the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of a reasonable written offer of settlement* made within thirty days of the mailing or delivery of the written demand for relief required by this section."

causal connection between the seller's deception and the buyer's loss. Only those losses sustained by the buyer which were the *foreseeable* consequence of the seller's deception should be recoverable. In this case, the defective transmission was unrelated to any deception by the seller. Not only was the seller not trying to pass off a defective transmission, but the seller replaced the original, defective transmission in the substitute vehicle before it was sold. It is true that, even with the replacement transmission, the vehicle remained defective, but that fact, standing alone, does not make the sale an "unfair or deceptive act or practice." G. L. c. 93A, § 2 (a).[5]

In measuring the reasonableness of a tender of settlement under § 9 (3) the judge should not treat attorney's fees as part of the "injury actually suffered by the petitioner." Counsel fees generally are not recoverable in this Commonwealth in the absence of statutory authorization. See *C.J. Hogan, Inc.* v. *Atlantic Corp.*, 332 Mass. 322, 327 (1955). We are unaware of any instance where the words "injury" or "injury actually suffered" have been used by our Legislature to include counsel fees. The reference in § 9 (3) to "injury actually suffered" is no different. Counsel fees are covered explicitly by the language in § 9 (4), quoted in n.4 above. If "injury actually suffered" included counsel fees, there would have been no need to make separate provision for the recovery of counsel fees.

The buyer points out that even where a buyer rejects a reasonable offer of settlement, he is entitled to counsel fees incurred to the date of his rejection of that offer in any successful suit he may bring to recover for a violation of § 2 of G. L. c. 93A. His argument that he should

---

[5] No argument is made here that Silver Lake violated the terms of any express warranty and, therefore, violated the provisions of any regulation of the Attorney General adopted pursuant to G. L. c. 93A, § 2 (c), as was the case in *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 702-703 (1975).

be entitled to consideration of his reasonable attorney's fees in measuring the reasonableness of an offer of settlement is not without its appeal as a matter of legislative policy, at least if the maximum amount of the attorney's fees is limited by some objective standard. However, the Legislature has allowed counsel fees only if suit has been brought, and we see no justification for this court's ignoring that statutory restriction. The buyer does not seriously contest the amount of the judge's allowance for counsel fees on any other ground.[6]

Considering Silver Lake's tender of settlement in relation to the damages actually suffered by the buyer, the judge was warranted in ruling that Silver Lake's offer of settlement was reasonable and in awarding c. 93A damages of $500. Although the judge made no finding of the value of the offer of settlement (and the buyer did not move for additional findings under Mass. R. Civ. P. 52 [b]), there was evidence that the offer which permitted the buyer to exchange his 1973 vehicle for a similar 1974 vehicle was worth at least $700. The offer to give the buyer his money back in exchange for the vehicle called for a balancing of (a) the buyer's loss of the sales tax ($99.18), the motor vehicle registration fee, and any other possible G. L. c. 93A damages against (b) the advantage of getting a full refund of the price paid for his vehicle, which was then second hand. The judge was warranted in ruling that the buyer was offered a settlement which would have compensated him reasonably for any loss sustained, including the consequences of Silver Lake's failure to give him the benefit of the bargain

---

[6] The judge allowed attorney's fees to the date of Silver Lake's offer of settlement and not, as he should have, to the date of rejection of the offer. He did not find the date of the rejection of Silver Lake's offer. However, by its terms (see n.3 above), the offer was not open for more than fifteen days. Accepting the record as containing adequate evidence of the legal services rendered and of the charges incurred by the buyer for counsel, the allowance of $250 was not clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).

which he thought he was making. Cf. *York* v. *Sullivan, ante,* 157, 165 (1975), and cases cited. When any damages due to the sale of the defective transmission and due to the buyer's counsel fees are disregarded, the award of $500 to the buyer for his c. 93A damages is unassailable on this record.

The buyer argues that Silver Lake's acts were "willful or knowing violations of . . . [§ 2]," which entitle him to "three but not less than two times" his actual damages (§ 9 [3]). Section 9 (3) does not grant an injured party such relief if the injured party has rejected a reasonable offer of settlement made in accordance with the requirements of § 9 (3). After providing for a limitation on recoverable damages in a case in which the judge finds an offer of settlement to be reasonable in relation to the injury actually suffered, § 9 (3) then states what damages are recoverable " [i]n all other cases." Among those damages " [i]n all other cases" are double to triple damages when the violation of § 2 is wilful or knowing. Thus, plainly, the statute contemplates that even a wilful or knowing violator of § 2 may limit his maximum potential damages by making a reasonable offer of settlement.[7]

*Judgment affirmed.*

---

[7] Of course, the provision for multiple damages creates a strong incentive for a wilful or knowing violator of § 2 to make a particularly generous settlement offer, hoping thereby to have limited his potential liability and perhaps to have avoided costly litigation. But, if a reasonable offer is made, as the judge found there was here, there is no basis for awarding multiple damages under § 9 (3).