STANDARD REGISTER COMPANY *vs.* BOLTON-EMERSON,
INC.,
& others.[1]

No. 94-P-31.

Essex. January 20, 1995. - May 12, 1995.

Present: WARNER, C.J., PERRETTA, & DREBEN, JJ.

*Contract*, Damages. *Fraud. Consumer Protection Act*, Damages, Business-
man's claim, Unfair or deceptive act. *Damages*, Loss of profits.

Discussion of cases considering whether a contract clause limiting liability
for consequential damages operates to bar recovery on a claim under
G. L. c. 93A. [547-550]
A limitation clause in a commercial contract excluding consequential dam-
ages for breach thereof did not operate to exclude damages for lost
profits on a claim under G. L. c. 93A alleging the defendants acted
unfairly and deceptively by misrepresenting its ability to perform the
contract. [550]
Corporate officers who fraudulently negotiated and induced a commercial
contract, but who were not parties to the agreement, were personally
liable for damages resulting from their misrepresentations made in vio-
lation of G. L. c. 93A, § 11. [550-552]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 6, 1989.
The case was heard by *John T. Ronan*, J.
*William J. Rooney, Jr.*, for the defendants.
*Timothy C. Blank* for the plaintiff.
WARNER, C.J. This controversy arises out of an order
placed on March 1, 1988, by the plaintiff Standard Register
Company (Standard Register) with the defendant Bolton-
Emerson, Inc. (Bolton), for the manufacture and delivery of
a label machine known as a hot melt coater. We summarize
the facts (none of which is challenged) as set forth by the

---

[1] John W. Fitzgerald and Glen I. Urquhart.

trial judge in his memorandum of decision. Prior to the order, Standard Register informed Bolton that delivery of the coater by September 1, 1988, was critical to correspond with a move to a new production facility. Bolton officials John Fitzgerald, president, and Glen Urquhart, vice president of sales and marketing, intending to induce Standard Register into granting Bolton the contract, assured Standard Register that the coater would be completed in the required six months even though they knew at the time that performance by the agreed date was not possible because of undisclosed corporate cash flow problems. In reliance on Bolton's assurances that it could deliver in a timely fashion, Standard Register contracted with Bolton for the purchase of a new coater. Bolton never delivered the coater. After the original delivery date expired, Fitzgerald and Urquhart falsely represented to concerned Standard Register officials on numerous occasions that completion of the coater was imminent when they knew that Bolton's financial difficulties rendered construction of the coater impossible. In reliance on these false assurances, Standard Register refrained from obtaining a substitute coater for almost one year and instead used its old coater which was moved to the new plant. Standard Register was not able to achieve its anticipated production with the old, slower coater.

Tired of the pattern of delay and empty promises perpetrated by Fitzgerald, Urquhart, and Bolton, Standard Register finally cancelled the contract, obtained a coater from another source, and sued for damages. Standard Register filed a two-count complaint claiming breach of contract against Bolton seeking a return of its deposit, cost of the replacement coater, moving expenses, and lost profits; and claiming a violation of G. L. c. 93A, § 11, against both the corporation and Fitzgerald and Urquhart individually for their misrepresentations seeking multiple damages and attorney's fees. Following a bench trial, a judge of the Superior Court ruled in favor of Standard Register on both counts. Judgment entered against all defendants in the amount of $1,163,474 on both the contract and G. L. 93A, § 11, counts combined, includ-

ing $985,297 in lost profits. This total was doubled for a knowing and wilful violation of chapter 93A, plus an additional $160,000 in attorney's fees.

The defendants raise two issues on appeal, both limited to an attack on the amount of damages that the trial judge determined Standard Register was legally entitled to recover on its complaint. First, all defendants argue that Standard Register was not entitled to damages for lost profits under either count since the limitation of liability provisions of the contract precluded recovery of all such consequential damages.[2] Second, defendants Urquhart and Fitzgerald argue that, even if consequential damages were properly allowed, the judge erroneously assessed against them a portion of lost profits resulting from the breach of contract for which Bolton as the corporate defendant is solely liable. We affirm.

1. *Lost profits damages.* Bolton and Standard Register, as commercially sophisticated parties, were free to limit or exclude prospective consequential damages arising from a breach of the coater contract so long as the waiver was not unconscionable. G. L. c. 106, § 2-719(3). See also *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 124 (1986). However, Standard Register alleged, and the judge ruled, that the lost profits damages suffered by Standard Register were caused by the defendants' unfair or deceptive acts of misrepresenting Bolton's ability to perform the coater contract in violation of G. L. c. 93A, § 11, and not a result

---

[2]There are two limitation of remedies provisions in the coater contract: "1. Warranties and Buyer's Exclusive Remedies. . . .

"BUYER'S REMEDIES with respect to any product sold by us shall be LIMITED EXCLUSIVELY to the right to replacement or repair f.o.b. Lawrence, Mass., or refund as above provided. IN NO EVENT SHALL WE BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHICH MAY ARISE IN CONNECTION WITH SUCH PRODUCT."

"6. Delivery. . . .

"Bolton-Emerson, Inc. shall not be liable for delay due to causes beyond its reasonable control . . . . IN NO EVENT SHALL WE BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHICH MAY ARISE IN CONNECTION WITH ANY SUCH DELAY."

of Bolton's breach of contract. The question is whether the limitation of liability provisions in the coater contract preclude Standard Register from recovering lost profits under its complaint for a violation of G. L. c. 93A, § 11, based on the defendants' intentional misrepresentations.[3]

An action pursuant to G. L. c. 93A is "neither wholly tortious nor wholly contractual in nature." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975). See also *York* v. *Sullivan*, 369 Mass. 157, 164 (1975); *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 626 (1978). Even so, claims of unfair or deceptive acts or practices may be founded on activities that more closely resemble either a traditional breach of contract action, see *Linthicum* v. *Archambault*, 379 Mass. 381, 387 (1979) (breach of warranty), or an action in tort. See *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979) (misrepresentation). See also *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365, 1370 (D. Mass. 1983), affd., 740 F.2d 59, 70 (1st Cir. 1984). Such a classification of a chapter 93A claim as either a contract or tort action has been dispositive, for instance, in determining the scope and effect of a choice-of-law provision in a contract. See *Worldwide Commodities, Inc.* v. *J. Amicone Co.*, 36 Mass. App. Ct. 304, 307-308 (1994). See also *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, *supra*; *Northeast Data Sys. Inc.* v. *McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 610 (1st Cir. 1993).

Likewise, two recent cases involving the interaction of contractual limitation provisions and § 11 claims show that a determination of whether a limitation of remedies provision precludes recovery under chapter 93A depends on the classification of the G. L. c. 93A, § 11, claim as one in contract or tort. First, in *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 379 (1990), the court held that a limitation

---

[3]The parties briefed and argued whether the consequential damages clause was properly pleaded and raised below at trial and whether the clause applied to these facts according to the rules of contract interpretation. Since we decide that the limitation clause has no effect on a claim under chapter 93A founded on a tort-based theory of fraud irrespective of its validity and meaning, we do not need to reach such issues.

of liability provision in a commercial contract could bar recovery for a claim under G. L. c. 93A, § 11, arising from a breach of contract warranty. The court expressly recognized that a chapter 93A claim founded on a breach of warranty is "duplicative of a traditional contract claim." *Id.* at 378, citing *Linthicum* v. *Archambault*, 379 Mass. at 387. Since the limitation of liability provision limited remedies to actual damages under the claim for breach of contract,[4] *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, *supra* at 372, the provision likewise barred any additional remedies under the chapter 93A claim which was "merely an alternative theory of recovery under the contract." *Id.* at 378-379. In contrast, this court recently ruled in *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 619-621 (1994), that a limitation of liability provision in a software licensing agreement was not effective to preclude recovery for a claim under G. L. c. 93A, § 11, arising out of intentional misrepresentation, a tort-based theory of recovery. We determined that the § 11 claim was not waived by the limitation of remedies provisions in the licensing agreement.[5] *Id.* at 619 n.11. *Canal Electric* and *VMark* hold that a chapter 93A claim analogous to a tort-based recovery overrides any contractual defenses, whereas a § 11 claim founded on a contract theory is subject to a contractual limitation of remedies provision. Ac-

---

[4]The measure of "actual" damages afforded a buyer of goods in an action for breach of contract is the difference between the market price or the cover price and the contract price. G. L. c. 106, § 2-713. G. L. c. 106, § 2-712. See also *Productora e Importadora de Papel, S. A. de C. V.* v. *Fleming*, 376 Mass. 826, 838 (1978).

[5]Chapter 93A provides for the recovery of actual damages as well as attorney's fees. "Actual" damages under chapter 93A are similar to compensatory damages in tort in that an injured party can recover all such damages proximately caused by the defendant's unfair or deceptive conduct. *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 101 (1983). The court in *VMark* refused to allow recovery of actual damages on the chapter 93A count because they were duplicative of the damages awarded under the tort count for misrepresentation. *VMark Software, Inc.* v. *EMC Corp.*, *supra* at 621. Chapter 93A also authorizes the award of double or treble damages in circumstances of a knowing or wilful violation of the statute. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. at 379 n.10.

cord *Winter Panel Corp.* v. *Reichhold Chems., Inc.*, 823 F. Supp. 963, 974 (D. Mass. 1993). See also Gilleran, The Law of Chapter 93A § 10:4, at 333 (1989).

In the present case, the misrepresentations of the defendants are at the core of Standard Register's claim for a violation of G. L. c. 93A, § 11, thereby making it a chapter 93A claim which sounds in tort rather than contract. Compare *Worldwide Commodities, Inc.* v. *J. Amicone Co.*, 36 Mass. App. Ct. at 307-308. The trial judge concluded that the defendants violated § 11 by misrepresenting Bolton's ability to complete the coater so as to induce Standard Register both to enter into the contract and to refrain from cancelling the contract. See *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, 571 F. Supp. at 1367, 1370; *Jurgens* v. *Abraham*, 616 F. Supp. 1381, 1386 (D. Mass. 1985). The facts supporting the deceitful conduct of the defendants which are the basis of the 93A claim are distinct from those giving rise to the breach of contract claim. In addition, the § 11 claim is predicated on the tort theory of common-law misrepresentation rather than merely a restatement of a breach of warranty claim under the contract as contrasted with *Canal Electric.* We hold that because the tort-like elements of the chapter 93A claim predominate over the contract elements, the limitation of liability provisions in the coater contract are ineffective to bar Standard Register from recovering for a violation of G. L. c. 93A, § 11, based on such deceitful activity. The only difference between the present case and *VMark* is that Standard Register pleaded its misrepresentation claim as part of its chapter 93A count rather than in a separate tort count. The result is that, unlike in *VMark*, there is no issue of duplicative actual damages, and Standard Register can recover under its § 11 claim any and all damages proximately caused by the defendants' misrepresentations, including lost profits.

Even if the limitation of liability provisions of the coater contract shielded Bolton as the corporate defendant from liability under G. L. c. 93A, § 11, the provisions have no effect on the independent liability of Fitzgerald and Urquhart who

were not parties to the contract. Although acting within the scope of their authority as officers of Bolton, Fitzgerald and Urquhart remain personally liable for their own misrepresentations made to Standard Register in violation of G. L. c. 93A, § 11, even though they did not sign the agreement. See *Nader* v. *Citron*, 372 Mass. 96, 102-103 (1977); *Bolen* v. *Paragon Plastics, Inc.*, 754 F. Supp. 221, 228 (D. Mass. 1990). Compare *Addis* v. *Steele*, 38 Mass. App. Ct. 433, 439-440 (1995), which discusses the personal tort liability of corporate officers who participate in the wrongdoing. It is well settled that chapter 93A claims for breach of warranty can proceed in the absence of privity of contract. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 756 F. Supp. 620, 629 (D. Mass. 1990), and cases cited. Likewise, privity is not required to maintain a nonwarranty-based action under 93A, i.e., one based on fraud, so long as the parties are engaged in more than a minor or insignificant business relationship. See *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 247-248 (1980). Contrast *Nei* v. *Boston Survey Consultants, Inc.*, 388 Mass. 320, 323-324 (1983). See also *Chestnut Hill Dev. Corp.* v. *Otis Elevator Co.*, 653 F. Supp. 927, 933 (D. Mass. 1987) (discussion of privity requirement). Here, Fitzgerald and Urquhart took an active role in the dealings with Standard Register for the duration of the business relationship. The pair fraudulently negotiated and induced the coater contract with Standard Register and orchestrated the misrepresentation regarding the progress of the project. The limitation of liability provisions of the coater contract do not impede the chapter 93A claim against the individual defendants, who are not parties to the agreement, predicated on their misrepresentations independent from the contract. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 756 F. Supp. at 629.

2. *Division of chapter 93A damages.* Urquhart and Fitzgerald argued, at an additional hearing to assess damages and attorney's fees under G. L. c. 93A, § 11, held by the judge following the trial, that their violations of chapter 93A, and thus their personal liability, did not occur until after

Bolton breached its contract at which point they began their pattern of falsely assuring Standard Register that delivery of the coater was forthcoming. The defendants, however, overlook the judge's finding that, "Bolton employees made representations it could expeditiously and efficiently fabricate the coating machine in question when it lacked the working capital to do so expeditiously and continued to make misrepresentations *from the March 1, 1988 contract to June 1, 1989*, intending [Standard Register] would rely upon the same" (emphasis added). In the context of the judge's findings as a whole, the reference to "Bolton employees" reasonably can be construed as referring to Fitzgerald and Urquhart who were at the center of the deception. Since there is no gap between the breach of contract and the individual defendants' own deceptive conduct, the record supports the judge's conclusion that the total amount of lost profits were foreseeable damages which flowed from Fitzgerald's and Urquhart's misrepresentations in violation of G. L. c. 93A, § 11. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. at 101.

3. *Appellate counsel fees.* The plaintiff has asked for an award of appellate attorney's fees. The plaintiff may file forthwith a petition to a single justice of this court for such fees, together with the necessary back-up material, and the defendants shall have ten days to respond to such submission, all in accordance with the procedure set forth in *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989).

*Judgment affirmed.*