Sanders, Janet L., J.
This is an action seeking to collect on a personal guaranty and to recover for other allegedly wrongful conduct following the execution of that document. The guaranty was executed by defendant Patrick Hannon on a loan for $219,759. The lender, Bright Horizons Finance, LLC, subsequently assigned its rights under the promissory note and under the guaranty to the plaintiff ABCD Holdings, Inc. Plaintiff has sued not only Hannon but various other individuals and entities on a variety of legal theories. Now before the Court are motions to dismiss by: 1) Hannon, as to some (but not all) counts against him; 2) defendants P. J. Hannon and RHR, LLC; and 3) defendant Agritech, Inc. This Court concludes that Hannon’s Motion must be Denied but that the other two Motions must be Allowed.
BACKGROUND
This action was instituted on June 6, 2016. Plaintiff tried and failed to obtain a preliminary injunction against Hannon. See Memorandum of Decision dated June 24, 2016 (Salinger, J.). The case was once again before the Court in connection with various motions to dismiss, which were allowed in part and as to other counts reserved, since plaintiffs counsel indicated that he would amend the complaint. The Amended Complaint was filed on October 7, 2016. The allegations as set forth in the Amended Complaint, together with attachments thereto, are as follows.
The loan which is at the heart of this case was made on July 21, 2011. It was made by Bright Horizons, an entity owned by Boston attorney George McLaughlin. The loan was made to two companies, Ware Real Estate (Ware) and ABC&D Recycling (Recycling). Ware *113 owns real property in Ware, Massachusetts improved with a waste transfer station; at the time, it was wholly owned by defendant Hannon. Recycling was in the business of recycling debris from construction sites and operated the waste transfer station in Ware. Hannon was its president and sole officer. Hannon was also a long time client of McLaughlin.
The loan to Ware and Recycling was payable in full on demand, pursuant to terms set forth in a promissory note (the “W&R Note”) with payments of interest to be made on a monthly basis. The W&R Note is attached to the Amended Complaint as Exhibit A. In addition to requiring payment on demand, the W&R Note gave Bright Horizon the right to receive half of the profits of the two businesses; it also conferred warrants which gave Bright Horizon the right to purchase a majority share of the two companies at an agreed-upon purchase price which could be paid by forgiving $100,000 of the debt owed as a result of the loan. The W&R Note was signed by Hannon as manager of Ware and as president of Recycling.
Hannon also executed a “Limited Guaranty,” attached to the Amended Complaint as Exhibit B. The Limited Guaranty provided that, in the “Event of Default” (a defined term under the Note), Hannon was prohibited from accepting or receiving any payment or reimbursement from Ware or Recycling, and if he did receive such payment, was required to hold it in trust. The Amended Complaint alleges that Hannon breached this provision by accepting and receiving payments from the two companies totaling at least $580,000 while he was in control of them; he also received $40,000 from the sale of certain property owned by one of the companies, raising the total to $620,000. The Guaranty further provided:
Anything to the contrary in this Guaranty notwithstanding, the liability of Guarantor under this Guaranty is limited to the repayment of (i) no more than $109,879 of the Guaranteed Obligations (the “Liability Limit”), plus (ii) 100% of any and all collection costs or expenses incurred by Lender against Guarantor, including reasonable attorneys fees and expenses . . .
(Emphasis added.)
To date, Ware and Recycling have failed to pay amounts owed under the W&R Note apart from a few interest payments. Similarly, Hannon has made no payments pursuant to the Limited Guaranfy. The Amended Complaint alleges that plaintiff has incurred $247,000 in collection costs so far. All told, it is alleged that Harmon owes $976,879 pursuant to the Limited Guaranty (the sum of the $109,879 amount that Hannon guaranteed, collection costs of $247,000, and $620,000 of “additional interest”).
The lawsuit also concerns a second loan which was made directly to Hannon in the amount of $125,000 (the Hannon Note). Hannon made some payments on that obligation. However, on May 3,2012, Hannon and his wife filed a petition for bankruptcy pursuant to Chapter 11. As a consequence of that petition, Bright Horizon was required to disgorge $45,000 of those payments as a preference. Plaintiff seeks to recover that amount in this action.
On July 21,2012, Bright Horizon assigned all of its rights under both the W&R Note and the Hannon Note as well as under the Limited Guaranfy to plaintiff ABCD Holding, an entity which (like Bright Horizon) was wholly owned by McLaughlin. On July 17, 2012, ABCD Holdings exercised the warrants it obtained under the W&R Note to purchase a majority interest in Ware and in Recycling. Hannon refused to honor them and litigation ensued as to whether ABCD Holdings had lawfully acquired a majority interest in Recycling. ABCD Holding, LLC v. ABC&D Recycling, Inc., Civ. No. 2012-00171 (Hampshire County Superior Court). A Superior Court judge (Carey, J.) concluded that it did, specifically finding that the loan agreement that conferred the warrants was a “fair and reasonable business contract.” See Findings of Fact, Rulings of Law and Order, attached to Amended Complaint as Exhibit N. Neither Ware nor Recycling is a named party in the instant action.
On June 20, 2014, the Bankruptcy Court entered judgment denying Hannon’s request to discharge his debts, freeing creditors (like the plaintiff) to pursue their claims against him. According to the Amended Complaint, Hannon had already embarked on a course of conduct to make his assets unavailable for creditors. Specifically, Hannon funneled money to a girlfriend with whom he cohabited, defendant Sofia Gagua, while the bankruptcy was pending. In 2015, she purchased a house in Uxbridge for $458,000 in cash — money that the Amended Complaint alleges she obtained from Hannon.
In the meantime, the Amended Complaint alleges that Hannon continued to engage in the same business of receiving soils and other materials for recycling or deposit at landfills. Specifically, it states that he is operating two landfills in Uxbridge known as “Rolling Hills” and “Green Acres.” Neither landfill is actually owned by Hannon, however: the Rolling Hills landfill is owned by reach-and-apply defendants Immanuel and L-5, and the Green Acres landfill is owned by reach-and-apply defendants Elias Richardson and Richardson-North Corporation. The Amended Complaint alleges that these entities have contracted with Hannon so that the money that they receive is actually funneled to Hannon directly or to entities that Hannon controls. Those entities include defendant Agritech (of which Hannon is president and sole officer), defendant RHR which is “nominally managed” by Hannon’s son, P. J. Hannon, and Similar Soils, Inc. Patrick J. Hannon is identified in Secretary of State filings as the president and director of Similar Soils. Reach-and-apply defendants J. Derenzo Company and J. Derenzo Con *114 struction Company, Inc. (Derenzo) have paid money to one or both of the Uxbridge landfills — payments which are then routed through the above named entities controlled by Hannon.
The Amended Complaint asserts the following counts against Hannon only: enforcement of Limited Guaranty (Count I); breach of contract (Count II); enforcement of Hannon Note (Count III); money lent (Count IV); unjust enrichment (CountV); and violation of Chapter 93A (Count VI). The motion by Hannon seeks to put a cap on liability as to Counts I and H (relating to the W&R Note) and seeks to dismiss Counts V and VI for failure to state a claim upon which relief may be wanted. Count VII, labeled “alter ego/piercing the corporate veil,” is asserted against RHR, Similar Soils and Agritech and alleges that all three entities are “sham corporations” controlled by Hannon for the fraudulent purpose of hiding his assets. Count VIII for “fraudulent transfer” alleges that Harmon has, “on information and belief,” transferred all or some of his contract rights to income earned in connection with the two Uxbridge landfills; that count is asserted against RHR, Agritech, Gagua, and P.J. Hannon. Count IX, asserted against “all defendants,” seeks to reach and apply the house purchased by Gagua. It also seeks to reach and apply “contract benefits” and “business opportunities” belonging to RHR, Similar Soils, Agritech, Immanuel Corp. and L-5. The motions by defendants RHR, Agritech and P.J. Hannon pertain to Counts VH, VIII, and IX.
DISCUSSION
A. Hannon’s Motion to Dismiss
Hannon concedes that the Amended Complaint states a claim for relief as to those counts arising from the W&R Note and the Harmon Note (Counts I, II and III). As to Count I and II concerning the W&R Note, however, he argues that the Limited Guaranty by its terms limits his liability to $109,879.50 together with collection costs and asks that recovery be capped by that amount. As to Count V for unjust enrichment, Hannon contends that it is superfluous, given the availability of a contract remedy. As to the Chapter 93A claim, Hannon argues that it does not apply to disputes among parties involved in the same business venture and does not he in any event where the conduct alleged is a “mere breach of contract.” This Court concludes that, at this early stage in the case, the motion must be denied.
Harmon’s argument as to the cap on his liability has some superficial appeal. Certainly, the language of the Limited Guaranty could not be clearer. It states that “(a]nything to the contrary in this Guaranty notwithstanding,” Harmon’s liability under that that contract is limited to “repayment of (i) no more than $109,879 of the Guaranteed Obligations (the ‘Liability Limit’), plus (ii) 100% of any and all cohection costs or expenses incurred by Lender against Guarantor, including reasonable attorneys fees and expenses.” Although Hannon also promised not to accept payments from either Ware or Recycling and, if he did, to hold those amounts in trust, the above quoted language limits plaintiffs recovery for that breach to the amount expressly set forth in the Limited Guaranty. If plaintiff had alleged only a breach of the Limited Guaranty, then this would be the end of the story. The Amended Complaint alleges more than a breach of that contractual obligation, however, asserting that, at the time that Ware and Recycling were in default on the W&R Note, Harmon essentially drained them of all of their assets. In doing so, he essentially rendered worthless the stock warrants that the companies had given to Bright Horizon so that, when ABCD Holdings exercised those warrants, both Ware and Recycling were empty shells saddled only with debt. This is enough in this Court’s view to state a claim that Hannon has engaged in unfair and deceptive practices in violation of G.L.c. 93A, §2.
As the Supreme Judicial Court has recognized, the reach of Chapter 93A is quite broad and may even apply to conduct which is otherwise legal. Kattar v. Demoulas, 422 Mass. 1, 14 (2000) (upholding lower court’s denial of a motion to dismiss a 93A claim as to conduct involving the exercise of a right to foreclose). Because the statute does not attempt to define what constitutes an unfair or deceptive act or practice, the definition necessarily depends on the circumstances of each case. Commonwealth v. DeCotis, 366 Mass. 234, 242 (1974); see also Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473, 476 (1991) (use of discretionary contract right to force financial concessions violated c. 93A). Where the case involves a contract with a limitation of liability provision, that cap will not necessarily bar a broader recovery under chapter 93A: if the chapter 93A claim depends entirely on the breach of contract claim, it will, but if the conduct at issue is more tortious in nature, it will not. Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass.App.Ct. 545, 550 (1995). Thus, for example, a limitation of liability provision in a software agreement was not effective to preclude recovery under Chapter 93A where the conduct alleged was intentional misrepresentation, a tort-based theory. V. Mark Software, Inc. v. EMC Corp., 37 Mass.App.Ct. 610, 619-21 (1994). In the instant case, Hannon is accused of draining the assets of Ware and Recycling, which not only made it impossible for them to pay off the loan but also rendered the stock warrants that plaintiff had received as part of that loan transaction essentially valueless. This is conduct that sounds more in tort.
As to the defendant’s argument that 93A does not apply, this Court concludes that (at least based on the allegations of the Amended Complaint) this is not a dispute between two parties to the same venture: it arises from an arm’s length transaction negotiated between Bright Horizons on one hand and the two companies controlled by Hannon, Ware and Recycling. Although ABCD Holdings (as assignee of Bright *115 Horizon’s rights) ultimately did become a majority shareholder in Ware and Recycling, that was only after the alleged wrongdoing had occurred.[1]
B. Agritech’s Motion to Dismiss
Agritech, which was not a party to the two notes at issue in this case, is included as both a defendant and as a reach-and-apply defendant. The Counts asserted against it are Counts VII, VIII and IX of the Amended Complaint. This Court concludes that the Amended Complaint fails to state a claim upon which relief may be granted.
In naming Agritech as a defendant in Count VH, plaintiff asserts that Agiitech and Hannon are essentially one and the same. As Agritech points out, this is a novel use of the corporate veil piercing doctrine, which is ordinarily used to pierce the corporate form and hold individuals liable for the corporate debt. Here, the reverse is true: plaintiff is seeking to hold Agritech liable for the debt of an individual officer to another corporate entity. Moreover, there is no allegation that Agritech itself has done anything to injure the plaintiff. In any event, the Amended Complaint does not set forth facts which would allow this Court to disregard the corporate form. See My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620 (1968) (listing relevant factors). To survive dismissal, a complaint must plead more than “labels and conclusions” but allege facts with “enough heft to show that the pleader is entitled to relief.” Iannachino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twomblg, 550 U.S. 544 (2007). The Amended Complaint certainly contains conclusions: for example, it alleges that, on “information and belief,” Agiitech is the “alter ego” of Hannon. It also goes on at some length to describe Hannon’s histoiy of misconduct in other transactions. But as to specific facts supporting Count VII, it alleges only that Hannon is Agiitech’s president, sole officer and director and derives revenue from it. This is not enough to survive a motion under Rule 12(b)(6).
Count VIII alleges that Hannon fraudulently transferred certain assets to Agritech in violation of the Uniform Fraudulent Transfer Act (UFTA). See G.L.c. 109A, §§5-6. That requires a showing that Hannon as the debtor has made some “transfer” to Agiitech after the debt to the plaintiff arose. Under the UFTA, a transfer is defined to mean the “disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, and lease, creation of a lien or other encumbrance.” G.L.c. 109A, §2. The Amended Complaint, however, does not explain what Hannon transferred to Agritech. Plaintiff appears to argue that Hannon enjoyed certain business opportunities in connection with the Uxbridge landfills and that he set up Agritech to realize these opportunities. But that is not conduct that falls within the purview of the UFTA.
Count IX is asserted against Agritech as a reach- and-apply defendant. According to the Amended Complaint, Agritech has received certain payments in connection with the operation of the two Uxbridge landfills beginning in December 2014. In naming Agritech as a reach and apply defendant, plaintiff is apparently attempting to claim an entitlement to these payments. A valid action for reach and apply, however, requires that the property being “reached” is a debt owed by the reach and apply defendant (here Agritech) to the principal defendant (here Hannon). Mass. Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687 (1984). That necessarily requires a showing that the reach-and-apply defendant has some specific obligation, incurred through consideration, that is owed to the debtor. The Amended Complaint does not identify the debt that Agiitech owes to Hannon.
C. Motion to Dismiss by P.J. Hannon and RHR, LLC
Like Agritech, neither P.J. Hannon nor RHR are parties to the Notes that give rise to this case, but each is named both as a defendant and a reach-and-apply defendant in the same counts that are lodged against Agritech. Just as those counts are deficient as to Agritech, they also fail to state a claim against P.J. Hannon and RHR, for the same reasons. That is, plaintiff has failed to allege specific facts to pierce the corporate veil or to otherwise hold RHR and P.J. Hannon responsible for Hannon’s misdeeds (Count VII). It does not identify what property Hannon has fraudulently transferred to either RHR or P.J. Hannon so as to support a claim under the UFTA (Count VIII). Finally, there is nothing in the Amended Complaint to suggest that either RHR or P.J. Hannon owe a debt to Hannon that can be reached by plaintiff and applied to satisfy Hannon’s debt (Count IX).
CONCLUSION AND ORDER
For all the foregoing reasons, the Motion to Dismiss by Patrick Hannon is DENIED. The Motions to Dismiss by Agritech, Patrick J. Hannon and RHR, LLC are ALLOWED and it is hereby ORDERED that Counts VII, VIII and IX be DISMISSED as to defendants P.J. Hannon, RHR, LLC and Agritech, Inc. only.

 though the unjust enrichment claim may indeed prove to be duplicative or otherwise have no legal basis apart from the claims that survive, this Court declines at this point to dismiss it from the case. It is conceivable, for example, that facts maybe developed thatwill call into question the enforceability of the Limited Guaranty, which was apparently negotiated between McLaughlin and Hannon when Hannon was his client. If plaintiff is deprived an adequate remedy at law, then this equitable remedy of unjust enrichment may be in order.