NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1611                                          Appeals Court

THE EXHIBIT SOURCE, INC.  vs.  WELLS AVENUE BUSINESS CENTER,
LLC.


No. 17-P-1611.

Suffolk.     September 13, 2018.  -  November 20, 2018.

Present:  Wolohojian, Lemire, & Englander, JJ.


Landlord and Tenant, Security deposit, Consumer protection,
     Attorney's fees, Multiple damages.  Consumer Protection
     Act, Landlord and tenant, Damages, Attorney's fees, Unfair
     or deceptive act, Offer of settlement.  Damages, Consumer
     protection case, Attorney's fees.


     Complaint received and sworn to in the Central Division of
the Boston Municipal Court Department on May 6, 2014.

     The case was tried before Myong J. Joun, J.


     Evan M. Fray-Witzer for the defendant.
     David C. Aisenberg for the plaintiff.


     ENGLANDER, J.  The defendant commercial landlord Wells

Avenue Business Center, LLC (Wells), failed to return the

$15,982 security deposit of the plaintiff tenant, The Exhibit

Source, Inc. (Exhibit Source).  Exhibit Source sued, asserting

various common-law claims, as well as a claim under G. L.

c. 93A, § 11.  The jury found for the plaintiff on the common-law claims, and the judge separately found for the plaintiff under c. 93A, and awarded treble damages and attorney's fees.  The Appellate Division affirmed.  On further appeal to this court, the defendant argues that (1) the trial judge improperly adjusted the jury's damages award, (2) the facts did not support a c. 93A violation, (3) language in the commercial lease prohibited the award of multiple damages, and (4) it made a reasonable offer of settlement, which pretermitted an award of multiple damages and attorney's fees.  We affirm.

Background.  Exhibit Source and Wells entered into a commercial lease (lease) pursuant to which Exhibit Source provided a security deposit of $15,982.  The lease terminated August 31, 2013.  The lease expressly required the defendant landlord to return the security deposit "[w]ithin thirty (30) days" of lease termination, except that the landlord could "apply" the security deposit to compensate for damages suffered as a result of a "Tenant Default."  "Tenant Default," in turn, was a defined term; as discussed below, the only "tenant default" that could possibly apply to the facts here was in lease section 16.1(d) -- "failure by Tenant to fulfill any other obligation under this lease, if such failure is not cured within twenty (20) days of notice from Landlord to Tenant . . ." (emphasis supplied).

As the trial judge found, the defendant landlord failed to fulfill its obligations with respect to the security deposit. The plaintiff tenant vacated the premises as of August 31, 2013. Representatives of the landlord and the tenant walked through the premises on September 4, 2013. The landlord's representative did not raise any issue as to the condition of the premises at that time, or indeed for the next seven months. Starting in October of 2013 the plaintiff repeatedly requested the return of the security deposit. A representative of the landlord represented several times that the full amount would be forthcoming. That did not happen.

Eventually, on April 1, 2014, the landlord returned $1,202.28 of the deposit, and retained $14,780. The landlord claimed the $14,780 was for damage to the property, allegedly caused when the tenant removed certain shelving and signage upon leaving in August of 2013. The alleged damage would have been visible during the September 4, 2013, walk-through. At no time prior to April 1, 2014, did the landlord provide notice to the tenant of any damage, and the landlord never provided an opportunity to cure as contemplated by the lease.

The plaintiff filed suit on May 6, 2014, and asserted claims for breach of contract, breach of the implied covenant of good faith, conversion, misrepresentation, and violations of G. L. c. 93A, § 11. The landlord did not make a settlement

offer when it filed its answer on May 30, 2014, although it had offered $6,000 around the time that the tenant filed suit.[1]

The jury returned verdicts for the tenant on each of the common-law claims, in response to special verdict questions. It awarded damages of $25,366.70, which it listed on its special verdict form thusly:

> "$20,000.00    damages
> $ 5,366.70    security balance
> $25,366.70    plaintiff to receive"

The trial judge reserved the c. 93A claim for himself and on June 10, 2015, heard additional arguments on the issue. The landlord filed posttrial motions directed at the jury verdict, including a motion under Mass. R. Civ. P. 59, 365 Mass. 827 (1974), to remit the jury's damages award. The judge entered a combined order on the posttrial motions and the c. 93A claim, in which he (1) allowed the motion for remittitur and reduced the jury's damages award to $14,780, and (2) found for the plaintiff on the c. 93A claim, trebled the plaintiff's "actual damages" to $44,340, and awarded attorney's fees and costs, later determined to be $60,511.74. The judge's c. 93A findings bear setting forth here:

> "Here, [landlord] had absolutely no intention of returning the security deposit to plaintiff. After months of stringing plaintiff along under false representations that

---

[1] As discussed _infra_, the landlord did increase its settlement offers as the litigation proceeded.

the security deposit will be paid to plaintiff, [landlord] manufactured a reason to keep the security deposit by claiming damage to the property -- a reason that did not exist when [landlord's representative] conducted the walk-through inspection on September 4, 2013 . . . ."

On the parties' cross appeals, the Appellate Division of the Boston Municipal Court affirmed in a unanimous and well-reasoned opinion.  That court also awarded $30,100 in additional attorney's fees, incurred by the tenant in responding to the defendant's appeal.  The defendant now appeals to this court.

Discussion.  1.  The damages award.  The defendant first argues that the judge erred in his handling of the jury verdict on damages.  It contends that the only valid damages award was the $5,366.70 identified on the verdict form as "security balance," and that the $20,000 designated by the jury as "damages" was "wholly unsupported by any evidence."

We need not decide whether the judge's remittitur was proper here, because we affirm the $14,780 damages award that the judge made under c. 93A.  The c. 93A claim was tried to the judge, not the jury; the c. 93A award was separate from the jury's verdict.  The judge found that the defendant violated c. 93A, that the violation was knowing or willful, and that "the appropriate disposition is to treble plaintiff's actual damages."  The judge was charged with setting damages on the c. 93A claim, and was not required to follow the jury's damages award.  See Klairmont v. Gainsboro Restaurant, Inc., 465 Mass.

165, 186 (2013) (noting the "well-established principle" that a judge may deviate from the jury's factual findings when determining c. 93A liability). The trial judge's order sets forth his reasoning that $14,780 -- the unreimbursed portion of the security deposit -- was the proper amount of damages. Indeed, in his order the judge stated that the case was tried on the theory that damages were a "sum certain" of $14,780, and the judge also held as a matter of law that the damages amount could not be reduced based upon any damage that the tenant allegedly caused to the leased property, because the landlord had not complied with the terms of the lease as to any such reduction. Furthermore, a damages award of $14,780 is plainly valid under c. 93A, and well supported by the record.[2]

2. <u>The finding of c. 93A liability</u>.[3] In its reply brief, the defendant argues that the conduct at issue could not violate c. 93A, as a matter of law. According to the defendant, this

---

[2] The defendant argues that the trial judge never made a damages award under c. 93A, and instead "was trebling the actual damages awarded by the jury (as 'remitted')." That is not a reasonable reading of the judge's findings and order. As noted, the judge concluded his c. 93A discussion by stating, "[T]he appropriate disposition is to treble plaintiff's <u>actual damages</u>" (emphasis added). The judge then awarded $44,340, meaning that the judge's award of "actual damages" was $14,780.

[3] We accept the trial judge's findings of fact on the c. 93A issue absent clear error, but review his applications of law de novo. <u>Kuwaiti Danish Computer Co</u>. v. <u>Digital Equip. Corp</u>., 438 Mass. 459, 470 (2003).

case presents "nothing more than a good faith dispute . . . over the amount due under a commercial lease." The defendant posits that any misrepresentations it may have made about the return of the security deposit are irrelevant, because they were not used to try to extort "some concession from [Exhibit Source]."

This argument was not made in the defendant's opening brief, and accordingly we need not consider it. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); Fafard v. Conservation Comm'n of Barnstable, 432 Mass. 194, 195-196 (2000). Nevertheless, it is worth noting that the argument is well wide of the mark. The defendant does not challenge any of the trial judge's factual findings. Those findings include (1) that the defendant deliberately strung the plaintiff along for seven months, representing that it would return the security deposit when it had "no intention" of doing so; (2) that the reasons the defendant ultimately gave for not returning the deposit were "manufactured" -- that is, a pretext, and (3) that the defendant knew that, as a result of its actions, the plaintiff would need to hire a lawyer and to incur legal fees, and that such was part of the defendant's strategy to "wear out" the plaintiff, in hopes that it would cease its pursuit of the deposit or accept less in settlement.

These factual findings comfortably establish a violation of c. 93A. That statute makes unlawful "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." G. L. c. 93A, § 2 (a). The statute does not define "unfair or deceptive acts or practices." While a breach of contract alone does not qualify, we have said that "[t]o be held unfair or deceptive under c. 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness." VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 620 (1994).

The trial judge's findings here went well beyond "recognized" "concept[s] of unfairness." This was not a dispute over the application of a contract, but rather was a considered and intentional exercise of control over the plaintiff's property -- a strategy employed in the hope that the property could be, ultimately, taken by the defendant without right to do so.

3. The award of treble damages and attorney's fees. The defendant also mounts two arguments directed against the trial judge's award of treble damages and attorney's fees. First, the defendant argues that treble damages are precluded by a limitation of liability clause in section 17.2 of the lease, which states:

"In no event will Landlord be liable for punitive damages, lost profits, business interruption, speculative consequential or other such damages."[4]

The limitation of liability clause does not aid the defendant here. In <u>Standard Register Co</u>. v. <u>Bolton-Emerson, Inc</u>., 38 Mass. App. Ct. 545 (1995), this court similarly considered whether a limitation of remedies clause in a commercial contract applied so as to preclude remedies otherwise available under c. 93A. We held that the applicability of such a contract provision depends upon whether the c. 93A claim sounds more in contract, or in tort: "[A] chapter 93A claim analogous to a tort-based recovery overrides any contractual defenses, whereas a § 11 claim founded on a contract theory is subject to a contractual limitation of remedies provision." <u>Id</u>. at 549. We went on to hold in <u>Standard Register</u> that the "core" of the plaintiff's claim was based upon misrepresentations the defendant made as to its ability to provide the product it was offering. <u>Id</u>. at 550. We concluded that this conduct sounded in tort; it was "deceitful," and "distinct" from the facts underlying the plaintiff's contract claim. <u>Id</u>.

---

[4] There is a threshold issue whether multiple damages under c. 93A would qualify as "punitive damages . . . [or] consequential or other such damages." We assume that they do, without deciding.

Applying the Standard Register test, we have no difficulty concluding that the plaintiff's c. 93A claim here sounds predominantly in tort. As described above, the judge's uncontested findings are that the defendant undertook a course of action (and inaction) designed to result in the wrongful conversion of the plaintiff's property.[5] Those actions violate well established legal norms that are independent of the parties' contract.

The defendant's second argument for avoiding the treble damages award, as well as the award of attorney's fees, is that it made "reasonable offers of settlement," which the plaintiff rejected. Specifically, the defendant points to (1) an offer of $6,000, which it made around the time the complaint was filed on May 6, 2014; (2) an offer of $14,780, which it made on June 20, 2014, some twenty days after it filed its answer; and (3) an offer of $22,000, which it made on August 7, 2014. The trial judge rejected the defendant's argument that it made a reasonable offer of settlement, and we agree.

Chapter 93A, § 11, provides, in pertinent part:

"The respondent may tender with his answer in any such action a written offer of settlement for single damages.

_____

[5] Although our conclusion that the plaintiff's c. 93A claim sounds in tort is supported by the jury's verdicts on the common-law claims of misrepresentation and conversion, it is not dependent upon, or dictated by, those findings. Rather, we review the trial judge's decision as to the gravamen of the c. 93A claim in light of the trial judge's findings.

> If such tender or settlement is rejected by the petitioner, and if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner, then the court shall not award more than single damages."  (Emphasis added.)

The defendant did not tender any offer of settlement with its answer.  Leaving aside the $6,000 offer (which the trial judge found was not reasonable), the other two offers were made well after the answer was filed, and after the plaintiff had engaged in additional litigation.  The defendant's latter two offers did not comply with the statute's plain language.  See Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 825 (2014).

The defendant ignores this noncompliance and argues, in essence, that at least the $22,000 offer of settlement was reasonable as a matter of law, thereby precluding a treble damages award.  The defendant argues that the $22,000 offer exceeded the total of the plaintiff's damages and costs incurred at the time that the offer was made.  And although the plaintiff by that time had also incurred attorney's fees that likely would not be reimbursed in full by the $22,000 offer, the defendant argues that under the case law such incurred attorney's fees cannot be considered when evaluating the reasonableness of a c. 93A settlement offer, relying in particular on Kohl v. Silver Lake Motors, Inc., 369 Mass. 795 (1976).

The defendant cites no case holding that a court is <u>required</u> to limit a c. 93A award to single damages based upon a settlement offer that was not made until after the defendant filed its answer. Such an argument is inconsistent with the statute's plain language. The judge no doubt can <u>consider</u> a settlement offer made post-answer when exercising his discretion as to whether to award multiple damages.[6] <u>International Fid. Ins. Co.</u> v. <u>Wilson</u>, 387 Mass. 841, 857 (1983) (noting that "the conduct proscribed by the statute is as much the failure to make a reasonable settlement offer as it is the substantive violation of c. 93A"). In that context, however, the judge's decisions as to whether a violation was "willful or knowing" and whether to award multiple damages may take into account a variety of relevant facts, including in particular the degree of the defendant's culpability as well as what settlement offers were made. See <u>id</u>. at 856-857.

Here the trial judge did not abuse his discretion in awarding treble damages and in refusing to reduce such damages due to the defendant's settlement offers. He concluded that none of the offers was reasonable at the time it was made, as the offers, while increasing, always fell short of providing the

---

[6] Under c. 93A, § 11, if the court finds a "willful or knowing violation," it "shall" award "up to three, but not less than two . . . times" the actual damages.

plaintiff with the relief it was reasonably likely to achieve by continuing on with the litigation it had been forced to bring, and had tried to avoid.  In this context, once litigation had commenced in earnest and the plaintiff had been forced to incur significant attorney's fees, there was no error in considering that the settlement offers did not provide for reimbursement of attorney's fees incurred as a result of the defendant's unfair practices.[7]  Nothing in the Kohl decision is to the contrary.

The November 21, 2017, amended judgment of the Appellate Division is affirmed.

So ordered.

---

[7] The plaintiff has requested reasonable attorney's fees incurred on this appeal.  Such an award is appropriate in this case under c. 93A.  Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 433 (2005).  The plaintiff may file with this court an application for fees and costs, together with supporting materials, within fourteen days of the date of the rescript of this opinion.  See Fabre v. Walton, 441 Mass. 9, 10 (2004).  The defendant shall have fourteen days thereafter to respond.  The plaintiff's request for double costs is denied.